**23-13842**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

JASON M. BROWNING, MD,

*Plaintiff-Counter Defendant-Appellant,*

—v.—

BAY RADIOLOGY ASSOCIATES PL, CARL G. BAILEY, JR., MD, EMILY D. BILLINGSLEY, MD, LLOYD G. LOGUE, DO, GREGORY A. PRESSER, MD, et al.,

*Defendants-Counter Claimants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF FLORIDA

## BRIEF FOR PLAINTIFF-COUNTER DEFENDANT-APPELLANT

ROBERT C. JACKSON
D. ROSS MCCLOY, JR.
WILLIAM PLATT, IV
HAND ARENDALL HARRISON
  SALE, LLC
304 Magnolia Avenue
Panama City, Florida 32401
(850) 769-3434

*Attorneys for Plaintiff-Counter
  Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel of record verifies that those persons and entities that have or may have an interest in the outcome of the above captioned case are listed below:

1. Bailey, Carl G., M.D. (Appellee and physician member of Appellee Bay Radiology)

2. Bay Radiology Associates, P.L. (Appellee)

3. Billingsley, Emily D., M.D. (Appellee and physician member of Appellee Bay Radiology)

4. Branning, Jeremy C. (counsel for the Appellees)

5. Browning, Jason M., M.D. (Appellant)

6. Clark Partington (law firm for the Appellees)

7. Hand Arendall Harrison Sale (law firm for the Appellant)

8. Harrell, Daniel E. (counsel for the Appellees)

9. Henry, The Honorable William (State of Florida Circuit Judge)

10. Jackson, Robert C. (counsel for the Appellant)

11. Logue, Lloyd G., D.O. (Appellee and physician member of Appellee Bay Radiology)

12. McCloy, D. Ross Jr. (counsel for the Appellant)

13. Platt, William IV (counsel for the Appellant)

14. Presser, Gregory A., M.D. (Appellee and physician member of Appellee Bay Radiology)

15. Ramey, Scott L., M.D. (Appellee and physician member of Appellee Bay Radiology)

16. Rushing III, W. Daniel (Appellee and officer of Appellee Bay Radiology)

17. Spencer, Andrew McKinnon (counsel for the Appellees)

18. Weintritt-Davis, Lindsey, M.D. (Appellee and physician member of Appellee Bay Radiology)

19. Winsor, Allen C. Honorable (United States District Court Judge)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Counter Defendant-Appellant, Jason Browning, M.D. ("Browning") respectfully requests the Court hear oral argument. This appeal presents questions on the appropriateness and requirements for sanctions under Rule 37 of the *Federal Rules of Civil Procedure*. There is a currently a split among the circuits on interpretation of this rule and this Court is one of the circuit courts that has not adopted a clear standard. Additionally, this appeal presents a question on the application of the *McDonald Douglas* burden shifting in an FMLA case after this Court's post-judgment decisions in *Tynes v Florida Dept. of Juvenile Justice*, 88 F.4th 939 (11th Cir. 2023) and *Lapham v. Walgreen Co*., 88 F.4th 879 (11th Cir. 2023). Finally, this case presents the unusual situation where a district court kept supplemental jurisdiction over a state court breach of contract claim but not the opposing counterclaim after all federal claims were dismissed.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................... C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ..................... i

TABLE OF CITATIONS ................................................ iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ........................................ 2

STATEMENT OF THE CASE ........................................... 3

    I.   Course of Proceedings and Disposition of
       the Lawsuit ....................................................... 3

    II.  Statement of the Facts ........................................ 8

       A. Browning's relationship with Bay Radiology .............. 8

       B. Hurricane Michael's Impact ................................. 9

       C. Browning's FMLA Request ............................... 13

       D. Bay Radiology's Termination of Browning's
          Employment ................................................... 15

    III. Standard of Review ......................................... 20

SUMMARY OF THE ARGUMENT .................................. 22

ARGUMENT ............................................................ 23

    I.   The District Court Erred in its Imposition of Rule 37
       Sanctions Against Browning ................................. 23

A. The district court did not consider that Browning provided evidence of damages prior to the close of discovery ........................................ 23

B. The district court's analysis of whether Browning's non-disclosure was substantially justified or harmless was insufficient and inadequate ...................................................... 26

C. The district court erred when it imposed the most severe sanction possible – a complete dismissal of three of four counts – for a Rule 37 violation without any showing of willfulness or bad faith ........... 30

D. The district court's Rule 37 sanctions of Browning should be reversed and remanded .............. 32

II.  The District Court Erred in Granting Summary Judgment to Bay Radiology on Browning's FMLA Retaliation and Interference Claims ........................... 33

A. The district court misunderstood and misconstrued material facts in its final order .............. 33

B. The reason why Bay Radiology terminated Browning was pretextual .................................... 35

C. There is a convincing mosaic of evidence of discrimination by Bay Radiology ......................... 39

III. The District Court Erred in Accepting Supplemental Jurisdiction on some State Law Claims but Not Others, Including Splitting Breach of Contract and Counter-Claim Actions, when No Federal Law Claims Remained ............................................... 44

CONCLUSION ....................................................... 49

CERTIFICATE OF COMPLIANCE ................................... 50

CERTIFICATE OF SERVICE .......................................... 51

# TABLE OF CITATIONS

PAGE(S)

**Cases**

*Ameritox, ltd. v. Millennium Laboratories, Inc.*,
803 F.3d 518 (11th Cir. 2015) ..................................... 46

*BankAtlantic v. Blythe Eastman Paine Webber, Inc*.,
12 F.3d 1045 (11th Cir. 1994) ..................................... 30

*Batson v. Salvation Army*,
897 F.3d 1320 (11th Cir. 2018) ..................................... 35

*Bissey v. Ag-Pro Companies, LLC*,
5:22-CV-92-GAP-PRL, 2022 WL 19404237
(M.D. Fla. Oct. 26, 2022) ........................................ 46

*Caldwell v. Warden, FCI Talladega*,
748 F.3d 1090 (11th Cir. 2014) ..................................... 34

*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd*.,
993 F.3d 1299 (11th Cir. 2021) ..................................... 26

*Crawford v. ITW Food Equip. Group, LLC*,
977 F.3d 1331 (11th Cir. 2020) ..................................... 26

*Diamond Tr. u/a/d 10/28/2005 v. Diamond*,
21-11985, 2022 WL 4493035
(11th Cir. Sept. 28, 2022) ........................................ 31

*Douse v. Delta Air Lines Inc*.,
21-13499, 2023 WL 6636194 (11th Cir. Oct. 12, 2023) .......... 31

*Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc*.,
663 F. Supp. 3d 1294 (M.D. Fla. 2023) ........................... 26

*James v. United States*,
3:22CV18025-TKW-HTC, 2023 WL 9103130
(N.D. Fla. May 4, 2023) ........................................... 27

*Jefferson v. Sewon Am., Inc*.,
891 F.3d 911 (11th Cir. 2018) ..................................... 21

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,
735 F.2d 414 (11th Cir. 1984) ........................................ 45

*Lamonica v. Hartford Ins. Co. of the Midwest*,
336 F.R.D. 682 (N.D. Fla. 2020) ................................... 27

*Lapham v. Walgreen Co.*,
88 F.4th 879 (11th Cir. 2023) ................................... 33, 39

*Lloyd v. Twin Cedars Youth & Family Services, Inc.*,
5:22-CV-195, 2024 WL 247066 (M.D. Ga.
Jan. 23, 2024) ....................................................... 35

*Malautea v. Suzuki Motor Co., Ltd.*,
987 F.2d 1536 (11th Cir.1993), *cert. denied,*
510 U.S. 863, 114 S.Ct. 181, 126 L.Ed.2d 140
(Oct. 4, 1993) ....................................................... 30

*Mee Indus. v. Dow Chem. Co.*,
608 F.3d 1202 (11th Cir. 2010) ..................................... 21

*Mega Life & Health Ins. Co. v. Pieniozek*,
585 F.3d 1399 (11th Cir. 2009) ..................................... 20

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
549 F.3d 1344 (11th Cir. 2008) ................................. 27, 28

*Palmer v. Hosp. Auth. of Randolph Cnty.*,
22 F.3d 1559 (11th Cir. 1994) ...................................... 46

*Powell v. Siegal*,
447 Fed. Appx. 92 (11th Cir. 2011) ................................ 31

*Raney v. Allstate Ins. Co.*,
370 F.3d 1086 (11th Cir. 2004) ................................. 21, 45

*Sabal Constr. & Roofing, LLC v. W. World Ins. Co.*,
2:20-CV-989-SPC-KCD, 2022 WL 16725364
(M.D. Fla. Oct. 21, 2022) .......................................... 47

*Sanguinetti v. Rambosk*,
2:21-CV-529-JLB-KCD, 2024 WL 167265
(M.D. Fla. Jan. 16, 2024)........................................... 27

*Silas v. Sheriff of Broward Cnty., Florida*,
    55 F.4th 863 (11th Cir. 2022) ................................... 21, 45

*Taylor v. Mentor Worldwide LLC*,
    940 F.3d 582 (11th Cir. 2019) ................................. 26, 32

*Todd v. Fayette Cnty. Sch. Dist.*,
    998 F.3d 1203 (11th Cir. 2021) ...................................... 35

*Tynes v. Fla. Dep't of Juvenile Just.*,
    88 F.4th 939 (11th Cir. 2023) ................................... 39, 40

**Statutes**

28 U.S.C. § 1291 ............................................................. 1

28 U.S.C. § 1331 ............................................................. 1

28 U.S.C. § 1367 .......................................................... 1, 45

28 U.S.C. § 1367(a) .................................................. 4, 45, 46

28 U.S.C. § 1367(c)(3) ..................................................... 46

29 U.S.C. 882601-2654 (2006)
    ("Family Medical Leave Act") ............................... *passim*

Florida Statutes § 607.0410 ........................................... 4, 5

**Rules**

Fed. R. Civ. P. 26(a) .................................................. 23, 26

Fed. R. Civ. P. 26(e) ....................................................... 24

Fed. R. Civ. P. 37 ..................................................... *passim*

Fed. R. Civ. P. 37(c) ....................................................... 26

Northern District of Florida Local Rule 7.1(I) ........................... 6

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Browning originally filed this case in state court, but Defendants removed the federal questions to the district court under 28 U.S.C. § 1331 and the supplemental state actions under 28 U.S.C. § 1367. Doc. 1. This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final order and judgment issued by the district court on August 1, 2023, that disposed of or remanded all the parties' claims. Doc. 37, 38. Browning timely filed a Motion to Amend Judgment on August 29, 2023, Doc. 41, which the district court denied on October 24, 2023, Doc. 46. Browning then filed this notice of appeal on November 21, 2023. Doc. 52.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in its application of sanctions under Rule 37 of the *Federal Rules of Civil Procedure* when it dismissed three of four claims in their entirety as a sanction under the Rule without determining whether the violation was willful or in bad faith.

2.      Whether the district court erred as a matter of law in granting summary judgment for Defendants on Browning's Family Medical Leave Act, 29 U.S.C. 882601-2654 (2006) (the "FMLA") claims by not reviewing the undisputed facts in the light most favorable to Browning and with the proper standards, effective substituting its judgment for that of a reasonable jury.

3.      Whether the district court erred in accepting supplemental jurisdiction and ruling on some state law claims but not others, including splitting breach of contract and counter-claim actions based on the same contract, when no federal law claims remain.

## STATEMENT OF THE CASE

This is an appeal of FMLA and breach of employment contract claims by a physician against a radiology practice. Dr. Browning worked for Bay Radiology for over a decade. In August 2019, he was diagnosed with a temporary medical problem that kept him from practicing medicine, so he requested FMLA leave. Within days of receiving Browning's FLMA request, Bay Radiology terminated his employment contract for cause. Browning followed with this lawsuit for breach of contract and FMLA violations in Florida state court.

### I.    Course of Proceedings and Disposition of the Lawsuit.

On September 9, 2021, Browning filed suit against Bay Radiology Associates, P.L. ("Bay Radiology"); Carl G. Bailey, Jr., M.D. ("Bailey"); Robert S. Bain, Jr., M.D. ("Bain"); Emily D. Billingsley, M.D. "Billingsley"); Lloyd G. Logue, D.O. ("Logue"); Gregory A. Presser, M.D. ("Presser"); Scott L. Ramey, M.D. ("Ramey"); Lindsey Weintritt-Davis, M.D. ("Weintritt"); and W. Daniel Rushing, III ("Rushing")[1] in the Circuit Court of the Fourteenth

---

[1] For purposes of this brief and subsequent pleadings, all Defendants-Counter Claimants-Appellees shall be referred to as the "Defendants," and Bailey, Billingsley, Logue, Presser, Ramey, Weintritt, and Rushing collectively shall be referred to as the "Individual Defendants."

Judicial Circuit in and for Bay County, Florida in Civil Action No. 21-1092CA. Doc. 1 at 9-64. Browning alleged a breach of contract (Count I), FMLA violations for interference (Count II) and retaliation (Count III), and a document production claim under Section 607.0410 of the *Florida Statutes.* (Count IV). *Id.* at 12-27. On November 17, 2021, Browning filed an amended complaint, which was identical except it removed Bain as a party. *Id.* at 73-125. On December 16, 2021, Defendants removed the case to the U.S. District Court for the Northern District of Florida, Panama City Division based upon a federal question under the FMLA. *Id.* at 1-7. On December 21, 2021, Defendants answered the amended complaint, and Bay Radiology filed a counterclaim under Florida law for breach of the same employment contract. Doc. 3. On December 30, 2021, Browning answered Bay Radiology's Florida law counterclaim. Doc. 7. The district court initially assumed supplemental jurisdiction of both parties' state law claims pursuant to 28 USC § 1367(a). Doc. 37 at 13.

The parties engaged in discovery, and on October 27, 2022, the district court, *sua sponte*, scheduled the case for trial in February 2023. Doc 12. On November 4, 2022, the parties filed a joint motion for a 30-day enlargement of time to complete discovery. Doc. 13. Both parties cited continued

disruptions by the effects Hurricane Michael, which directly hit Panama City in October 2018. *Id*. at 2-3. Browning's personal residence was destroyed in the hurricane and Bay Radiology and its related entities' were actively litigating three litigation cases involving Hurricane Michael damages to their business and property. *Id*. (including associated litigation case citations). On November 7, 2022, the district court granted the parties' joint motion. Doc. 14.

In December 2022, the parties filed competing summary judgment motions. Browning sought a partial summary judgment on his breach of contract claim (Count I), the document production claim under Florida Statute §607.0410 (Count IV), and the Defendants' breach of contract counterclaim. Doc. 21. Defendants sought summary judgment on all of Browning's claims. Doc. 17. On January 12, 2023, the district court ordered a hearing on the competing motions for summary judgment. Doc. 28.

On January 20, 2023, the parties filed a notice of a trial term conflict and a joint motion to reschedule the trial. Doc. 30. In the motion, Bay Radiology reaffirmed that Hurricane Michael caused significant damage to its business property and the property of its related entitles for which made insurance claims. *Id.* at 2. Now, the state court trial of one of Bay Radiology's

claims related to Hurricane Michael had been rescheduled and would directly conflict with the trial schedule in this action. *Id.* at 3. On January 23, 2023, the district court cancelled the pending trial and removed this matter from the trial calendar. Doc. 31.

On January 27, 2023, the district court conducted a hearing on the competing summary judgment motions by the parties. Doc. 60. During the hearing, one of the issues discussed was whether Browning had demonstrated any damages for his FMLA and contract claims. Doc. 60 at 22, 40-41, 44-51, 60. On January 31, 2023, just two business days after the hearing, Browning moved for a short 30-day period to conduct additional discovery on damages to alleviate Defendants' claims that they were inadequately informed about them. Doc. 32. Defendants opposed this motion. Doc. 33. But, before the Court ruled upon it, Bay Radiology's managing member, Logue, provided testimony and documentation in one of Bay Radiology's insurance lawsuits that appeared to contradict his sworn testimony in this case on his compensation and thus, Browning's potential damages. See Doc. 34. Upon learning of this testimony and document, Browning filed for leave to file a reply pursuant to Northern District of Florida Local Rule 7.1(I). *Id.* The

district court took no immediate action on Browning's motion, his leave to file a reply, or the parties' summary judgment motions.

Approximately six months later, on August 1, 2023, the district court ruled that Browning had not timely established damages and issued judgment against Browning on his breach of contract claim (Count I) and his FMLA claims (Counts II, III). Doc. 37. The district court also denied Browning's motion for partial summary judgment on the counterclaim and remanded it to state court along with the statutory document production claim (Count IV). *Id.* at 15. Finally, the district court denied Browning's motion to reopen discovery (Doc. 32) and leave to file a reply (Doc. 34). *Id.* Judgment immediately followed. Doc. 38.

On August 15, 2023, Defendants filed a motion for entitlement to attorney's fees based upon the district court's judgment on the Florida breach of contract claim. Doc. 40. On August 29, 2023, Browning filed a motion to amend judgment requesting that the district court remand Browning's Florida breach of contract claim along with all the remaining state law claims already remanded to state court since no federal claims remained. Doc. 41. Defendants opposed this motion, Doc. 44, and the district court denied Browning's motion to amend the judgment on October 24, 2023. Doc. 46. On November 14, 2023,

7

the district court granted Defendants' motion for attorney's fees. Doc. 51. On November 21, 2023, Browning timely file his notice of appeal. Doc. 52.

## II.    Statement of the Facts

### A.    Browning's relationship with Bay Radiology.

Browning is a practicing radiologist licensed by the State of Florida who worked for Bay Radiology continuously and on a full-time basis from 2008 until 2019. Doc. 21-1 ¶ 2;[2] Doc. 37 at 2. Bay Radiology was his first job out of medical school, and the only place he had worked until he was terminated in 2019. *Id.* An employment contract governed Browning and Bay Radiology's employment relationship (the "Contract"). Doc. 18-1 ¶ 3; Doc. 21-1 ¶ 2. The Contract contained a non-compete clause that prohibited him from engaging in competitive activities against Bay Radiology for two (2) years from the date of termination of the Contract. Doc. 18-1 at 27.

In addition to being an employee of Bay Radiology, Browning was also a partner and a member of Bay Radiology and its affiliated entities. Doc. 18-1 ¶ 3; Doc. 21-1 ¶ 3. For many years while Browning was there, Bay

---

[2] Citations to the record are to docket number and page number of the docket entry, unless the entry contains numbered paragraphs, which are then indicated by the ¶ symbol. Citations to transcripts in the record are to the docket number, then page and line number assigned by the court reporter, unless otherwise indicated by a "(p. _)" after the docket number and page.

Radiology served as the exclusive radiology provider for the two major hospitals in Panama City, Florida – Ascension Sacred Heart Bay ("Ascension") and Gulf Coast Regional Medical Center ("Gulf Coast"). Doc. 18-1 ¶ 4; Doc. 37 at 2.

### B.    Hurricane Michael's Impact.

In October 2018, Hurricane Michael made landfall in Panama City and significantly impacted Bay Radiology's future operations and financial condition. Doc. 18-1 ¶ 6; Doc. 37 at 2. Operations at Ascension and Gulf Coast were heavily disrupted for a number of months, Doc. 18-1 ¶ 6, and Bay Radiology suffered significant financial repercussions. *Id.* Five of the thirteen radiologists with Bay Radiology left the practice within months. *Id.* Browning's home was destroyed. Doc. 13 at 2. And after the hurricane, he lived in a series of temporary residences with a newborn child, who was born only eight days after Hurricane Michael hit. Doc. 18-3 at 13:1-13; 14:4-9.

By the summer of 2019, Bay Radiology experienced difficulties servicing its obligations at Ascension and Gulf Coast due to its staffing shortage. Doc. 18-1 ¶ 7; Doc. 37 at 2. Bay Radiology notified Gulf Coast that it would no longer provide radiology services to the hospital. *Id.* Bay Radiology also told its physicians that they were free to discuss joining

Envision Physician Services ("Envision"), a competing radiology practice, after September 23, 2019. *Id.*[3]

On July 11, 2019, Bay Radiology leadership called a meeting to discuss the loss of the Gulf Coast contract and the continued viability of Bay Radiology. Doc. 21-1 ¶4; Doc. 18-5 at 21:23-25 and 22:1-11. According to the minutes of the meeting, the physician members of Bay Radiology decided to provide an "unrestricted [r]elease" from any covenant not to compete in each of the member employment agreements with Bay Radiology. Doc. 18-8 at 23(Ex.2). The purpose of the meeting was "so that people could move on to different jobs" so that "[t]hey could (sic) not worry about the no-compete clause." Doc. 18-9 at 14:3-6. Bay Radiology members were encouraged to look at all options for future employment as a radiologist, including continued work at Gulf Coast. Doc. 21-1 ¶4. The vote to provide an unrestricted release of the non-compete was unanimous. *Id.*

After the meeting, physician members, including Browning, were free to talk to any competing medical provider about potential employment,

---

[3] The district court summary judgment order indicates that this date was November 1, 2019, stating that this "was when Bay Radiology's services with Gulf Coast were to end" and refers to Docket No. 18-8 at 23-24. See Doc. 37 at 3. However, it is undisputed that September 23, 2019 is the date that Bay Radiology ceased to provide services to Gulf Coast according to Rushing's affidavit. See Doc. 18-1 ¶ 7. Bay Radiology requested early termination of the Gulf Coast agreement. Doc. 18-5 23:11-15, 28:4-25, 29:1-13.

including Envision. Doc. 18-5 at 24:24-25 and 25:1-2; Doc. 37 at 3. Talking to another medical provider was not considered a breach of the non-compete. Doc. 18-5 at 25:8-11. On July 12, 2019, Bay Radiology confirmed to Gulf Coast that "[t]he current staff of radiologists have been given permission to discuss joining Envision after [November] 1st 2019."[4] Doc. 18-8 at 24 (Ex.3); Doc. 18-5 at 26:8-20. Bay Radiology's President, Dr. Lloyd Logue, even coordinated a meeting for Bay Radiology's physicians to meet with Envision. Doc. 37 at 3. Logue, Ramey, Billingsley, Bain, and Browning attended the meeting where Envision discussed working conditions there, compensation, and other information to recruit physicians to work for them. Doc. 21-1 ¶ 7; Doc. 18-5 at 30:24-25 and 31:1-17; Doc. 18-9 at 14:7-23.

In July and August 2019, Browning had an ongoing and continuous discussion by text message with Logue about the future of Bay Radiology and its financial situation. See Doc. 18-5 at 38-58. Doc. 37 at 3. In these texts, Logue told Browning that:

    a.    "The Practice as we know it will be done." Doc. 18-5 at 38; Doc. 37 at 3.

    b.    "People will need to go to other jobs." *Id.*

---

[4] This date was subsequently changed to September 23, 2019. See Doc. 18-1 ¶ 7; Doc. 18-5 at 38:11-22.

c.    "There is not enough work." Doc. 18-5 at 38.

d.    He was "not in favor of perpetuating a losing business that only increases … everyone's[] financial risk." *Id.* at 39.

e.    "I encourage everyone to start looking [for] alternatives." *Id.* at 43

f.    "I think you can consider Bay Rad as you know it over b[y] Sept 23." *Id*. at 48.

g.    and that there would be "no money" and "[n]o salaries after September." *Id.* at 50.

Logue also knew that other doctors planned on leaving Bay Radiology and were talking to other providers, including corporate providers like Envision. Doc. 37 at 3. He told Browning that he (Logue) was not going to look for a corporate job, Doc. 18-5 at 51, but that "[s]ome people might like the security the corporate world offers," *Id.* at 52. He thought that Bay Radiology's other physicians—Ramey and Bain—were pending hires elsewhere. Doc. 37 at 3; Doc. 18-5 at 51. And, in fact, Ramey and Bain were looking for jobs at the same time as Browning and started working for Ascension the exact same day Browning eventually started working for Envision - September 24, 2019. Doc. 18-4 at 62:10-18 and 63:3-7; Doc. 18-9 at 7:1-12 and 20:13-23.

### C.    Browning's FMLA Request

On August 21, 2019, Browning informed Logue that he needed some time off for a significant medical situation with his family, unmet childcare needs, and a personal medical issue. Doc. 18-5 at 53; Doc. 21-1 ¶ 8; Doc. 37 at 3. In response, Bay Radiology told him that an unapproved absence would be considered "job abandonment," demanded an independent doctor's note, and an FMLA leave application. Doc 18-3 at 202; Doc. 18-5 at 63-65; Doc. 21-1 ¶ 8. In his over a decade of work with Bay Radiology, Browning had been sick and missed days before but had never been asked to provide a doctor's note. Doc. 21-1 ¶ 8. He was surprised by this request. *Id.* Browning asked, "We need to have the office approve fmla documents in order to take a day off to care for our children now?" Doc. 37 at 3. Doc. 18-5 at 61. Logue responded, "In your circumstances, yes." *Id.*

Browning had been treated by an independent physician since May 2019 for a GI related medical problem, which was impacting his ability to work. Doc. 18-3 at 100-102. So, he went to see this independent physician, and, after an exam, the physician recommended Browning not resume the practice of medicine for a brief 30-day period. *Id.* at 100, 229-232. Bay Radiology received the required medical paperwork from Browning but did

not approve his FMLA request. Doc. 18-3 at 36(p.130:11-19)[5] and at 131. Instead, Bay Radiology requested a second or third medical opinion and stated that Browning would have to have a fitness-for-duty exam to return to work. *Id.* at 131. Logue was concerned about Browning's FMLA request, as were all the partners according to Logue. Doc 18-5 at 42:2-25. In his experience, this GI problem would not impair someone's ability to be a radiologist. *Id.* at 43:12-14.

Surprised by Bay Radiology's unexpected request for a written FMLA leave request and subsequent pushback, Browning also made an FMLA request for child bonding leave. Doc. 18-3 at 33(p121:7-22), 227; Doc. 21-1 ¶ 8. This FMLA leave request was eventually approved on September 12, 2019. Doc 18-3 at 240-241. And Browning went on FMLA leave. Doc. 37 at 4.

Throughout his interactions with Bay Radiology in early September 2019, Browning was clear, in writing, that he was not abandoning his job and that he was willing to come in and help if he was able. Doc. 18-3 at 227. He never got a response to his offer to help. *Id.* In fact, Logue, the President of

---

[5] Citation here is to docket page with reference to transcript page.

Bay Radiology, can't remember any discussions he had with Browning after he went on FMLA leave. Doc. 18-5 at 53:13-15.

### D. Bay Radiology's Termination of Browning's Employment.

While Browning was on leave, Logue heard reports that were relayed to Bay Radiology's CEO, Dan Rushing, that Browning had agreed to join Envision and to continue providing radiology services at Gulf Coast. Doc. 18-1 at 5; Doc. 18-2 ¶ 4. Doc. 37 at 4; Although Rushing claimed he was "surprised" by this information, Doc. 18-1¶ 9, it is unclear why. Bay Radiology had been actively encouraging its physicians to seek other employment and even arranged a dinner with Envision to help its physicians find jobs there. Doc. 21-1 ¶ 7; Doc. 18-5 at 30:24-25 and 31:1-17; Doc. 18-9 at 14:7-23; Doc 37 at 3. Rushing knew that Bay Radiology's contract with Gulf Coast expired on September 23, 2019. Doc. 18-1 ¶7.  And Rushing was familiar with the onboarding of physicians providing radiology services and knew that it would take at least "several weeks" to property credential a physician before he or she could provide clinical services. Doc. 23-1 ¶¶ 3,4.

Bay Radiology contacted Browning several times to ask about these reports, Doc. 37 at 4, and demanded a response by 11:00 a.m., September 11, 2019. Doc. 18-3 at 237. Based on the increasingly confrontational tone of the

communications, Browning engaged counsel who responded before the deadline to explain that Browning was examining all of his options on future employment in light of Bay Radiology's termination of services at Gulf Coast and Ascension. Doc. 37 at 4; Doc 18-3 at 246-47. Further, counsel explained that he was reviewing Browning's employment agreement and other obligations to Bay Radiology and specifically inquired about the non-compete. Doc 18-3 at 246-47. Bay Radiology's counsel then responded with another deadline of 1:00 p.m., September 12, 2019. *Id.* at 248-249.

Before Bay Radiology's new deadline, Browning's counsel responded with concerns about Browning's unapproved FMLA leave request, requested clarifications about the same, and offered to provide additional information on the FMLA leave if needed. *Id.* at 250-251. Additionally, Browning's counsel sought more information about Browning's non-compete obligations since Bay Radiology raised in its previous day's response. *Id.* The next day, Bay Radiology terminated Browning's employment for cause. Doc. 18-1 at 53. Doc. 37 at 4.

Logue went looking for a copy of Gulf Coast's shift schedule in early September to see if Browning was on it. Doc. 18-2 ¶ 5. The schedule showed Browning would be working the week of September 24 for Envision. Doc.

18-1 at 6; Doc. 18-2 ¶ 5; Doc. 37 at 4. Browning is not involved in scheduling and was not aware that he was on any schedule. Doc. 18-3 at 39:7-23. Browning primarily worked at Gulf Coast for Bay Radiology and suspected that someone had an incorrect schedule through November 1st that did not consider Bay Radiology's contract termination on September 23, 2019. *Id.* at 40:1-8. Regardless, Bay Radiology did not contact Gulf Coast, Browning, Envision, or any other person to confirm why Browning was on the schedule before they terminated him. Doc. 18-4 at 67:25, 68:1-9.

Instead, based on the schedule, Bay Radiology determined that Browning was in violation of his employment contract. Doc. 37 at 4. The partners voted to terminate Browning immediately for cause. *Id.*; Doc. 18-1 at 6-7. They did not provide him any notice of a breach of contract or any notice whatsoever. Doc. 18-4 at 70:2-7. And they terminated him knowing that Browning had requested FMLA leave. Doc. 37 at 4; Doc. 18-6 at 49:23-25; Doc. 18-7 at 28:2-4, 32:19-23; Doc. 18-8 at 34:23-25; Doc. 18-9 at 19:23-20:1. When asked to explain why Browning was in violation of his employment agreement, Rushing explained that it was because Browning "was on FMLA leave and … employed by someone else." Doc. 18-4 at 67:15-17. Logue testified that Browning was being "dishonest" because he said he

was committed to Bay Radiology but signed on with another company while on FMLA leave. Doc. 18-5 at 48:9-19; Doc. 37 at 5.

But Browning was not the only Bay Radiology physician that left Bay Radiology and signed on with another competing provider in September 2019. Doc. 37 at 5. Both Ramey and Bain accepted a radiologist position with Ascension to start work on September 23, 2019. Doc. 18-4 at 62:13-23, 63:3-6. Doc. 18-9 at 7:9-13, 20:13-24. Neither were terminated for contract violations. Doc. 37 at 4; Doc. 18-1 at 7-8.   When asked to explain the difference between Browning and Ramey, Logue testified that Ramey "wasn't asking for time off," while Browning was being "dishonest" because "he signed on with another company during an FMLA request." Doc. 18-5 at 48:5-23; Doc. 37 at 5. Before Browning's termination, however, Logue already knew that Ramey and Bain were "pending hires" at a competitor. Doc. 18-5 at 19(p65:12-19); 51.

Browning started providing temporary locum tenans services for Envision on September 24, 2019, Doc. 18-3 at 31:2-7; Doc. 37 at 5, the same day that Ramey and Bain started working at Ascension, Doc. 18-4 at 62:13-23, 63:3-6; Doc. 18-9 at 7:9-13, 20:13-24. Browning finalized his agreement with Envision after he was fired by Bay Radiology. Doc. 21-1 ¶ 11; Doc. 37

at 5. As a result of his termination, Browning paid $28,375 for tail insurance coverage and transferred assets out of Bay Radiology's 401k and profit-sharing plan. *Id.*; Doc. 21-1 ¶13. Bay Radiology would have paid fifty percent (50%) of Browning's tail insurance coverage if they had not terminated him, but, because he was terminated, Browning had to pay the full amount. Doc. 18-4 at 77:6-18.

At deposition, Rushing reviewed Browning's invoice for tail coverage from his termination from Bay Radiology. *Id.* at 77:24-25, 78:1-24. Although he did not have a recollection of seeing the invoice before, Rushing thought it may be in a file somewhere or they had a copy. *Id.* at 79:21-23. Similarly, Browning's counsel thought it had been produced and provided a copy to Rushing and Bay Radiology's counsel to review. *Id.* at 78:3-8. Bay Radiology's counsel had not recalled seeing it before and objected to questions about it. *Id.* at 78:13-16. Regardless, Rushing and Bay Radiology had copies of the tail insurance invoice on December 8, 2022, before discovery closed. *Id.* at 77:24-25, 78:1-24.

Rushing confirmed that Medical Protective was Bay Radiology's malpractice insurance provider, and that the carrier would contact the physician directly. *Id.* at 78:18-23. The post-employment tail insurance

obligation was part of each physician's employment contract with Bay Radiology and had been since the contracts were redone in 2012. *Id.* at 76:22-25; 77:1-5. Bay Radiology had paid the tail insurance for Ramey, Doc. 18-9 at 15, and Presser, Doc. 18-6 at 32:14-16. Further, Browning and Logue texted briefly about the tail insurance requirements prior to his termination. Doc. 18-3 at 109:17-25; 110:1-4.

Bay Radiology's termination email to Browning stated he had violated Section 1.3 of the Employment Agreement by "engaging in the practice of medicine." Doc. 18-5 at 28. But Browning could not and did not engage in the practice of medicine while on FMLA leave. Browning saw no patients, nor provided any clinical services to anyone while he was on FMLA leave. Doc. 21-1 ¶ 10. He was prohibited from doing so by his physician during this time. *Id.* at 100, 229-232. In fact, he had not provided any clinical services for any other entity other than Bay Radiology throughout his eleven-year career with Bay Radiology. *Id.*

### III.    Standard of Review

Issue 1 – Rule 37 Sanctions. "Interpretation of the Federal Rules of Civil Procedure presents a question of law subject to *de novo* review…" *Mega Life & Health Ins. Co. v. Pieniozek,* 585 F.3d 1399, 1403 (11th Cir. 2009).

Review of a district court's decision to impose sanctions under Rule 37 is an abuse of discretion standard. *Mee Indus. v. Dow Chem. Co*., 608 F.3d 1202, 1211 (11th Cir. 2010).

Issue 2 – Summary Judgment. This Court reviews *de novo* an entry of summary judgment, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Jefferson v. Sewon Am., Inc*., 891 F.3d 911, 919 (11th Cir. 2018).

Issue 3 – Application of Supplemental Jurisdiction. This Court reviews a decision to decline supplemental jurisdiction over a state-law claim for abuse of discretion. *Silas v. Sheriff of Broward Cnty., Florida*, 55 F.4th 863, 865 (11th Cir. 2022). But since this Court has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial, *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1089 (11th Cir. 2004), it is unclear what the standard of review is when a district court refuses to do so.

## SUMMARY OF THE ARGUMENT

First, the district court erred when it determined that Rule 37 required the dismissal of three of Browning's four counts. The district court conducted little analysis of whether the discovery violation was harmless or insubstantial. When done, an analysis of the record shows that the violation was harmless or insubstantial. Further, the district court concluded that the Rule 37 violation precluded Browning from bringing any evidence of damages to trial; therefore the sanction was fatal to his FMLA and breach of contract claims. The district court, however, never made a determination that the discovery violation was willful or in bad faith, as is required by this Circuit's case law prior to dismissing counts for a Rule 37 violation.  This is clear, reversable error.

Second, the district court did an incomplete review of the record when dismissing Browning's FMLA claims on summary judgment and, further, made factual determinations that were not construed in favor of Browning, the nonmoving party. The court also applied only the *McDonnel Douglas* burden shifting analysis which this Court has said is incomplete may not consider all the facts a reasonable jury could conclude was evidence of FMLA retaliation

or interference. A thorough review of the record shows that a reasonable jury could conclude there is evidence of FMLA retaliation or interference.

Lastly, the district court erred when it accepted supplemental jurisdiction of one side of a state court breach of contract claim, but not the opposite counter-claim after no federal claims remained. Federal courts are courts of limited jurisdiction, and the Supreme Court and this Court have strongly encouraged district courts to remand all state court claims back to state court when no federal claims remain. Refusal to do so is reversible error.

## ARGUMENT

## I. The District Court Erred in its Imposition of Rule 37 Sanctions Against Browning

### A. The district court did not consider that Browning provided evidence of damages prior to the close of discovery.

The district court erroneously concluded that Browning should be sanctioned under Rule 37 because it failed to consider that Browning provided the tail insurance premium damage information to Bay Radiology prior to the close of discovery. Although it is true that reimbursement of tail insurance premiums was not disclosed in the initial Rule 26(a) disclosures, tail insurance damages, the specific amount of damages, and the document which the damages claim was based on were provided to Defendants and their counsel

at Rushing's deposition on December 8, 2022. This was prior to the close of discovery in a timely manner under the circumstances as required by Rule 26(e).

On December 8, 2022, the day after Browning's deposition,[6] Browning's counsel provided the tail insurance invoice to Bay Radiology. Doc. 18-4 at 78:1-25, 78:1-24. Browning's counsel reviewed the tail insurance invoice with Rushing. *Id*. 18-4 at 77:24-25, 78:1-24. Although he did not have a recollection of seeing the invoice before, Rushing thought it may be in a file somewhere or they had a copy. *Id*. at 79:21-23. Rushing confirmed that Medical Protective was Bay Radiology's malpractice provider. Id. at 78:18-20. And he confirmed the process on how tail insurance was handled for departing physicians. Doc. 18-4 at 76:25, 77:1-13. Although Bay Radiology's counsel could not recall seeing the document before and objected to it, *id*. at 78:13-16, there is no dispute that Bay Radiology had and was aware of these claimed damages and document prior to the end of discovery.

---

[6] It appears that Dr. Browning found the tail insurance invoice either just before or just after his deposition on December 7, 2022, which was the day before Rushing's deposition on December 8, 2022. See Doc. 18-3 at 2; Doc. 18-4 at 2; Doc. 60 at 69:17-24.

The availability of this document and damages was also discussed by the parties and district court at the summary judgment hearing. At the hearing, Browning's counsel confirmed Rushing's deposition testimony about the tail insurance damages. Doc. 60 at 69:10-16. And he confirmed that this document was not available prior to until that deposition, in part, due to Browning's loss of his home during Hurricane Michael. *Id.* at 69:17-24. Finally, Browning's counsel argued that Bay Radiology should not have been surprised by this tail insurance disclosure since they paid the tail insurance premiums for four other departing physicians at the same time, and they knew that Browning had tail coverage after he was terminated. *Id.* at 70:11-20. Bay Radiology's counsel disputed Browning's argument and claimed that the tail insurance damages document was never disclosed "in the initial disclosures, or any supplement thereto, or in response to any request for production about discovery." *Id.* at 60:4-8. He failed to disclose to the district court at the hearing, however, that he had this document since Rushing's deposition in early December. *See id.*

The district court did not apparently consider the fact that this document was provided before the close of discovery when it issued sanctions against Browning. There is no mention of Browning's pre-discovery disclosure in the order. *See* Doc. 37 at 6-8. Either the court was simply unaware of it or failed

25

to address it. Failure to address the fact that the tail insurance damages document was disclosed to Bay Radiology by Browning prior to the close of discovery is an error and should be reversed. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019)(stating that a clearly erroneous finding of fact is an abuse of discretion)(citation omitted).

### B. The district court's analysis of whether Browning's non-disclosure was substantially justified or harmless was insufficient and inadequate.

Rule 37(c) of the Federal Rules of Civil Procedures states that a party is not allowed to use information required to be provided by Rule 26(a) or (e) as evidence in a proceeding unless the failure to provide such information was substantially justified or is harmless. Fed. R. Civ. P. 37. This Court has not settled on the meaning of harmlessness under Rule 37. *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd*., 993 F.3d 1299, 1307 (11th Cir. 2021). But it has been the center of an ongoing debate in the Court. *See id; see also Crawford v. ITW Food Equip. Group, LLC*, 977 F.3d 1331, 1353 (11th Cir. 2020)(Tjoflat, J., dissenting)

To determine harmlessness, district courts in this circuit have applied a variety of tests. Courts in the Middle District of Florida often use a multi-factor test. *See Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc*., 663 F.

Supp. 3d 1294, 1305 (M.D. Fla. 2023); *see also Sanguinetti v. Rambosk,* 2:21-CV-529-JLB-KCD, 2024 WL 167265, at *2 (M.D. Fla. Jan. 16, 2024). These factors typically evaluate whether (1) the disclosure was a surprise to a party; (2) the ability to cure the surprise; (3) the extent the disclosure would disrupt the trial; (4) the importance of the disclosure; (5) the non-disclosing party's explanation for its failure to disclose. *See id*. (citations omitted). Some courts in the Northern District of Florida, where this case originated, use the factors, *Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 686 (N.D. Fla. 2020), while others have a less formulaic approach, *James v. United States*, 3:22CV18025-TKW-HTC, 2023 WL 9103130, at *2 (N.D. Fla. May 4, 2023). Here, the district court did not engage in any detailed analysis of harmlessness or substantial justification. Doc. 37 at 7-8. But if it had, it would have found justification or harmlessness present.

"A discovery violation is more likely to be harmless when the injured party was provided some knowledge of the relevant information." *Lamonica*, 336 F.R.D. at 686 (citing *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C*., 549 F.3d 1344, 1363 (11th Cir. 2008). Here, it is undisputed that Bay Radiology had some

knowledge of the relevant information prior to the expiration of the discovery period. *See infra* Argument I(A).

In addition to knowledge, the lack of a trial date is an important factor in determining if a failure to disclose is harmless and whether an abuse of discretion occurred. *OFS Fitel, LLC.,* 549 F.3d at 1364. Here, there was no impact to the trial schedule. Trial had been canceled before the summary judgment hearing at Bay Radiology's request, and no new trial date had been set. Doc. 30; Doc. 31. In fact, two business days after the summary judgment hearing, when the district court's concerns about damages became apparent, Browning moved to briefly reopen discovery for a short period on this simple issue which would have cured any misunderstandings on damages. Doc. 32. Surprisingly, Bay Radiology opposed the motion and Browning's subsequent request to file a reply. Doc. 33; Doc. 35. The district court let the motion sit, and six months later, the court ruled on it. Doc. 37 at 12-13. Six months was more than enough time to conduct limited discovery on this one document.

Finally, Hurricane Michael did impact this case to a much more substantial degree than the district court considered. Hurricane Michael devastated Bay Radiology and Browning. Bay Radiology essentially had to shut down its business because of it. Doc. 37 at 2. Browning lost his home,

Doc. 13 at 2, and lived in a series of temporary residences after the hurricane, Doc. 18-3 at 13:5-8. The effects of a category five hurricane - the third strongest ever to hit the United States - do not mitigate after a year or two. Records are destroyed or lost forever.[7] In such circumstances, it is not unusual for one specific document to be difficult to find. When Browning found the tail insurance invoice either just before or after his deposition, Browning provided it to Bay Radiology. Although not ideal, under the circumstances it was justified, and the nondisclosure was harmless.

In the end, this is not a case with complex damage computations or expert witnesses.[8] The damages from Browning's tail insurance premiums are clear and undisputed. Doc. 21-1 at 9-10. Browning had an obligation to pay the tail insurance premium that he would not have had if Bay Radiology had not terminated him. Doc. 18-4 at 77:14-18.  He paid his tail insurance premium directly to Bay Radiology's medical malpractice provider. Doc. 21-1 ¶7. Even before seeing the invoice, Bay Radiology knew that the approximate amount since four other departing positions left around the same time. Doc. 18-1 ¶13.

---

[7] Counsel for Browning's law office in downtown Panama City was also destroyed in Hurricane Michael.  Almost all the law office's paper records were lost.
[8] Neither party engaged nor disclosed any expert witnesses.

The district court here erred because it did an inadequate review of the harmlessness and justified standards and based its decision to sanction Browning on clearly erroneous facts. A review of the record shows that, although there was a failure to disclose initially, the late disclosure within the discovery period - without a trial scheduled and through no fault of Browning - could have been easily remedied and was effectively harmless to Bay Radiology.

**C.    The district court erred when it imposed the most severe sanction possible – a complete dismissal of three of four counts – for a Rule 37 violation without any showing of willfulness or bad faith.**

The district court clearly violated this Court's requirements when it outright dismissed three of Browning's four counts without an examination of willfulness or bad faith. The Eleventh Circuit caselaw is clear that a finding of willfulness or bad faith is needed when a district court dismisses a case. *BankAtlantic v. Blythe Eastman Paine Webber, Inc*., 12 F.3d 1045, 1049 (11th Cir. 1994). "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." *Id.*; *see also* e.g., *Malautea v. Suzuki Motor Co., Ltd*., 987 F.2d 1536, 1542 (11th Cir.1993), *cert. denied,* 510 U.S. 863, 114 S.Ct. 181, 126 L.Ed.2d 140 (Oct. 4, 1993). Dismissal "is considered a sanction of

last resort, applicable only in extreme circumstances." *Douse v. Delta Air Lines Inc*., 21-13499, 2023 WL 6636194, at \*5 (11th Cir. Oct. 12, 2023). "A sanction of default judgment *requires* a finding of willfulness or bad faith." *Diamond Tr. u/a/d 10/28/2005 v. Diamond*, 21-11985, 2022 WL 4493035, at \*3 (11th Cir. Sept. 28, 2022)(emphasis added).

Here, the district court made no such finding. *See* Doc. 37. In fact, it appears that the district court did not even consider willfulness or bad faith prior to dismissing three of Browning's four counts. The words "willfulness" or "bad faith" do not even appear in the final order. *See id.* This is clear error. At best, a review of the record shows that any discovery violations here are simple negligence or a misunderstanding. The record does not, and cannot, support a finding of willfulness or bad faith. It is unclear if the district court ever considered whether other less drastic sanctions would have been adequate, *see id.,* even when one such alternative was immediately offered by Browning via motion. Doc. 32.  Thus, the district court abused its discretion in dismissing Browning's FMLA and breach of contract counts. *Powell v. Siegal*, 447 Fed. Appx. 92, 94 (11th Cir. 2011)(holding that a district court abused its discretion without a clear record of willful contempt and a explicit finding that lessor sanctions would not suffice).

31

**D.    The district court's Rule 37 sanctions of Browning should be reversed and remanded.**

In imposing its Rule 37 sanctions against Browning and dismissing three of his four counts, the district court abused its discretion. "An abuse of discretion occurs only when the district court relies on a clearly erroneous finding of fact or an errant conclusion of law, or improperly applies the law to the facts." *Taylor,* 940 F.3d at 593 (citing *Adams v. Austal U.S.A., LLC,* 754 F.3d 1240, 1248 (11th Cir. 2014)).

The record here shows that, although Browning did not provide the tail insurance damage calculation and documents initially, he did so as soon as that document was located, Doc. 60 at 17-24, and prior to the end of the discovery period, Doc. 18-4 at 77:24-25, 78:1-24; that Bay Radiology CEO's and counsel reviewed the document prior to the end of the discovery period, *Id,*; that tail insurance premium payments were part of the contract for all departing physicians and known to Bay Radiology, *Id.* at 76:22-25; 77:1-5; and that this case had no trial pending, Doc. 31, and no experts for damage calculations.

The district court made clearly erroneous finding of facts and improperly applied the law to the facts when it failed to consider the record as a whole and never determined that Browning's violation was willful or in bad

faith.  If a harmful, substantial violation occurred here, it could have been easily remedied by the district court without resorting to dismissal. This Court should reverse the district court's Rule 37 sanctions against Browning and remand the case back to the district court for further consideration.

## II.    The District Court Erred in Granting Summary Judgment to Bay Radiology on Browning's FMLA Retaliation and Interference Claims.[9]

### A.    The district court misunderstood and misconstrued material facts in its final order.

The district court held that "even if Browning had properly disclosed the alleged tail coverage damages, his FMLA claims would still fail," Doc. 37 at 8, and granted summary judgment for Bay Radiology on these claims. Doc. 37 at 15. In doing so, the district court may have misunderstood key facts and misconstrued other facts in the moving party's favor (Bay Radiology).

First, one factual error in the district court's final order was the date that Bay Radiology physicians were free to discuss joining Envision.  The district court has the date as November 1, 2019, which it said was "when Bay

---

[9] For purposes of this argument, Browning merges his FMLA retaliation and interference claims. Although the claims have different elements, "[i]n cases where the alleged interference was the decision to terminate an employee … the employer "may defend against a[n] FMLA interference claim by establishing that the employee would have been terminated anyway." *Lapham*, 88 F.4th at 896 (citations omitted). Bay Radiology has raised this defense, and the evidence required to refute this defense is essentially the same as the evidence required to create a trialble issue of fact in a retaliation claim.

Radiology's services with Gulf Coast were to end." Doc. 37 at 3. But this is incorrect. It is undisputed that September 23, 2019, is the date that Bay Radiology ceased to provide services to Gulf Coast according to Rushing's affidavit and Logue's testimony. Doc. 18-1 ¶ 7. Doc. 18-5 23:11-15. Bay Radiology requested early termination of the Gulf Coast agreement. Doc. 18-5 23:11-15, 28:4-25, 29:1-13. This date is important because Browning joined Envision after September 23, 2019 but before November 1, 2019. With this incorrect date in the final order, it is unclear if the court thought that Browning joined Envision before Bay Radiology's services to Gulf Coast ended.

Second, the district court is required to construe all material facts in favor of the non-moving party at summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014)(stating "we view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party."). It does not appear that the district court did so here. In the final order, the court states:

> What Logue and Bay Radiology did care about was that Browning was "being dishonest" by "saying he's 100 percent committed to Bay Radiology" but "already sign[ing] on with another company during [his] FMLA request." Id. at 14 (48:13-19). Meanwhile, Ramey was not dishonest because "he didn't" sign on with a different company while still working for Bay Radiology.

Doc. 37 at 10. The court relied upon this fact to grant judgment to Bay Radiology. Yet, "sign on with a different company" is exactly what Ramey did. Doc. 18-9 at 7:3-13; Doc. 18-8 at 22. He joined Ascension on September 24, 2019, the exact same day as Browning. Doc. 18-3 at 26:8-15; Doc. 18-4 at 63:3-6; Doc. 18-9 at 7:9-13, 20:13-24; Doc. 21-1 ¶12. It appears the district court just got this fact wrong. If it didn't, then it construed the fact in Bay Radiology's favor not Browning's - the non-moving party here. This is error.

### B.    The reason why Bay Radiology terminated Browning was pretextual.

Luckily, this Court reviews *de novo* a district court's order granting summary judgment. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021). The FMLA prohibits an employer from retaliating against an employee for engaging in FMLA protected activities. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018). To support an FMLA retaliation claim, an employee can present direct or circumstantial evidence of retaliatory intent. *Lloyd v. Twin Cedars Youth & Family Services, Inc*., 5:22-CV-195 (MTT), 2024 WL 247066, at *7 (M.D. Ga. Jan. 23, 2024). But even without direct evidence, a plaintiff can rely on either the McDonnell Douglas burden-shifting framework or present a convincing mosaic of circumstantial evidence to create a triable issue of fact. *Id.*

Here, Browning presented a prima facie case of FMLA retaliation. Doc. 37 at 9 (finding that "[t]he time between his taking FMLA leave and his termination was 'very close'). Bay Radiology has produced a legitimate, non-discriminatory reason for his action – mainly that Browning was being "dishonest" when he accepted another job while on FMLA leave. *Id*. at 9-10. As the district court said, "that leaves pretext." *Id*. at 9.

"[T]he pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Doc. 37 at 9 (citing *Todd*, 998 F.3d at 1218 (quotations omitted)). And here, the decision makers' heads were all thinking about Browning's FMLA leave status, and not his "dishonesty." They were mad at him because he was taking FMLA leave, pure and simple. This is textbook retaliation.

When asked to explain why Browning was in violation of his employment agreement, Rushing testified that it was because Browning "*was on FMLA* leave and … employed by someone else." Doc. 18-4 at 67:15-17 (emphasis added). Logue also testified that Browning was being "dishonest" because he said he was committed to Bay Radiology but signed on with another company *while on FMLA leave*. Doc. 18-5 at 48:9-19; Doc. 37 at 5

36

(emphasis added). Logue was concerned about Browning's FMLA request, as were all the partners according to Logue. Doc. 18-5 at 42:2-25. In his experience, this GI problem would not impair someone's ability to be a radiologist. *Id.* at 43:12-14.

These concerns surfaced in Bay Radiology's response to Browning's medical leave request. Bay Radiology never approved Browning's medical FMLA request. Doc. 18-3 at 36(p.130:11-19) and 131. Instead, they requested a second or third medical opinion and stated that Browning would have to have a fitness-for-duty exam to return to work. *Id.* at 131. And, soon after Browning submitted his FMLA request, Logue went looking for a copy of Gulf Coast's shift schedule in September to see if Browning was on it. Doc. 18-2 ¶ 5. Bay Radiology didn't apparently care for Browning's child bonding FMLA request either. Rushing even put quote marks arounds the words "child bonding" (twice) when describing Browning's FMLA leave request in his affidavit for some strange reason, like it was not a legitimate request or should be ridiculed. *See* Doc. 18-1 ¶8.

Further, Bay Radiology treated Browning and the other physicians leaving the practice completely differently, undermining their "dishonest" termination reason. Starting in July 2019, all Bay Radiology physician

members were encouraged to look at options for future employment as a radiologist, including continued work at Gulf Coast, Doc. 21-1 ¶4, and with Envision. Doc. 37 at 3. Bay Radiology even arranged a dinner with Envision to help its physicians find jobs there. Doc. 21-1 ¶ 7; Doc. 18-5 at 30:24-25 and 31:1-17; Doc. 18-9 at 14:7-23; Doc 37 at 3. Rushing and Logue knew that Bay Radiology's contract with Gulf Coast expired on September 23, 2019. Doc. 18-1 ¶7; Doc. 18-5 23:11-15. And they knew that the process a physician and a new practice had to go through to onboard a radiologist would take at least "several weeks." Doc. 23-1 ¶¶ 3,4. So it should not have been a surprise that Browning was talking to Envision about a job while still employed with Bay Radiology. Yet, somehow, Logue thought this was "dishonest." Doc. 37 at 9. His testimony and stated reason for Browning's termination is especially hard to reconcile with his knowledge that Ramey and Bain, two other Bay Radiology physicians, were "pending hires" at Ascension back in August. Doc. 37 at 3; Doc. 18-5 at 51. Both started work at Ascension the exact same day as Browning. Doc. 18-4 at 62:10-18 and 63:3-7; Doc. 18-9 at 7:1-12 and 20:13-23. All three – Browning, Ramey, and Bain – were looking for jobs at the end of summer in 2019 while working for Bay Radiology.  Yet only one

was immediately terminated for cause, coincidentally soon after taking FMLA leave.

This evidence in the record directly rebuts Bay Radiology's stated reason for Browning's termination – that he was being dishonest when he accepted a job while on leave. The only difference between Ramey, Bain and Browning is that Browning had requested FMLA leave and, temporarily, was not working. A jury could reasonably conclude that, but for Browning exercising his FMLA rights, "he would not have been fired." *Lapham v. Walgreen Co*., 88 F.4th 879, 895 (11th Cir. 2023); *Tynes v. Fla. Dep't of Juvenile Just.*, 88 F.4th 939, 941 (11th Cir. 2023). There is enough evidence of pretext here that summary judgment on Browning's FMLA claims should be reversed.

**C.    There is a convincing mosaic of evidence of discrimination by Bay Radiology.**

In addition to showing that the reason offered by an employer for a termination is pretextual, an employee-plaintiff can also prove his case with a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes*, 88 F.4th 939 at 946. "[T]he ultimate question in a discrimination case is whether there is enough

39

evidence to show that the reason for an adverse employment action was illegal discrimination." *Id.* at 941.

In addition to the previously provided evidence that Bay Radiology's reason for its termination was pretextual, there is other evidence in the record from which a jury could reasonably conclude Browning's FMLA request and leave status was the real reason for his termination:

### *Browning's Work history*

Browning had worked for Bay Radiology continuously and on a full-time basis for over a decade, from 2008 until 2019, Doc. 21-1 ¶ 2; Doc. 37 at 2. Bay Radiology was his first job out of medical school, and the only place he had worked until he was terminated in 2019. *Id.* Browning has no prior record of any discipline or problems at Bay Radiology prior to his sudden termination in September 2019. *Id.* at 9.

### *Lack of Contact from Physician Partners*

Once Browning was on FMLA leave, he did not receive any calls, emails or texts from any of his partners either immediately before, during, or after his termination. Doc. 21-1 ¶ 9. This was even after he sent an email to Rushing stating that he was willing to come in and help if able. Doc. 18-3 at 227. He never got a response to his offer. Doc. 21-1 ¶ 9. In fact, Logue, the

President of Bay Radiology, can't remember any discussions he had with Browning after he went on FMLA leave. Doc. 18-5 at 53:13-15. Browning was totally shut out as a partner in Bay Radiology once he went on FMLA leave.

*Ignoring Browning's Employment Contract*

Bay Radiology's termination email to Browning stated he had violated Section 1.3 of the Employment Agreement by "engaging in the practice of medicine." Doc. 18-5 at 28.  But Browning could not and did not engage in the practice of medicine while on FMLA leave. Browning saw no patients, nor provided any clinical services to anyone while he was on FMLA from Bay Radiology. Doc. 21-1 ¶ 10. He was prohibited from doing so for a brief 30-day period by an independent physician. *Id.* at 100, 229-232. He had not provided any clinical services for any other entity other than Bay Radiology throughout his eleven-year career with them. *Id.*  Section 2.3 of Browning's employment agreement required 30-day notice and a right to cure for a for cause termination. Doc. 18-1 at 15.  Browning never received the required 30-day notice and opportunity to cure. Doc. 21-1 ¶ 9.

*Sudden, Unexpected Termination*

Browning first requested FMLA leave on August 21, 2019. Doc. 18-5 at 53; Doc. 21-1 ¶ 8; Doc. 37 at 3. Bay Radiology finally formally approved Browning's first FMLA leave request (child bonding) on September 12, 2019. Doc. 18-3 at 240. The day before, Bay Radiology sent a letter to Browning asking about his possible future work with Envision at Gulf Coast and demanded a response by 11:00 a.m., September 11, 2019. Doc. 18-3 at 237. Based on the increasingly confrontational tone of the communications, Browning engaged counsel who responded before the deadline to explain that Browning was examining his options on future employment in light of Bay Radiology's pending termination of services at Gulf Coast and Ascension. Doc. 37 at 4; Doc 18-3 at 246-47. Further, counsel explained that he was recently engaged and reviewing Browning's employment agreement and his other obligations to Bay Radiology. Doc 18-3 at 246-47.

Bay Radiology's responded with another deadline of 1:00 p.m., September 12, 2019. *Id.* at 248-249. Before Bay Radiology's deadline, Browning's counsel responded with concerns about Browning's FMLA leave request, requested clarifications about the same, and offered to provide additional information on the FMLA leave if needed. *Id.* at 250-251.

42

Additionally, Browning's counsel sought more information about the Browning's non-compete obligations since Bay Radiology raised in its previous day's response. *Id*. The next day, Bay Radiology terminated Browning's employment with cause. Doc. 18-1 at 53. Doc. 37 at 4.

Browning went from informal FMLA leave request to an immediate for cause termination in a little more than three weeks after an 11-year career with Bay Radiology. He was terminated two days after his FMLA leave was finally approved, and three days after he engaged in attorney to assist him with his FMLA and employment matters. A reasonable juror would ask "why the rush?"

In addition to the evidence on pretext, this "convincing mosaic" of evidence in the record shows that a reasonable juror could find that there is retaliation here. There are a lot of unanswered questions: why the rush? Why was one doctor treated differently than another? Why was a long-time employee fired a little over three weeks after he made a FMLA leave request? Why ignore the employment contract? These are all reasonable, legitimate questions that jurors might want to know the answer to and can support a finding of FMLA retaliation or interference. Again, there is sufficient

evidence here that summary judgment on Browning's FMLA claims was not warranted and should be reversed.

**III.    The District Court Erred in Accepting Supplemental Jurisdiction on some State Law Claims but Not Others, Including Splitting Breach of Contract and Counter-Claim Actions, when No Federal Law Claims Remained.**

If this Court determines that the district court did not abuse its discretion in dismissing Browning's claims under Rule 37 and that Bay Radiology is due summary judgment on Browning's FMLA claims, the Court must next consider the district court's action on supplemental jurisdiction. Here, Browning filed all claims and sought relief in state court. Doc. 1. Defendants removed the matter to federal court based on a federal question in the FMLA claims and filed a Florida law breach of contract counterclaim. *Id.* Since the district court resolved all federal court claims when it ruled on Browning's FMLA counts, there is no longer any basis for federal jurisdiction. Doc. 37. All remaining claims after the FMLA dismissal were Florida state law claims sitting in a federal venue. *Id.*

In such instances, U.S Supreme Court and Eleventh Circuit case law strongly favor remanding all remaining state law claims to state court. "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or

even requires dismissal of the state claims. *L.A. Draper & Son v. Wheelabrator-Frye, Inc*., 735 F.2d 414, 428 (11th Cir. 1984)(emphasis added)(citing *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139).

This Court recently reaffirmed this principle recently in *Silas v. Sherriff of Broward County, Florida*, 55 F.4th 863 (11th Cir. 2022). "Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Silas v. Sheriff of Broward Cnty., Florida,* 55 F.4th 863, 866 (11th Cir. 2022). District courts are strongly encouraged to dismiss any remaining state claims when all federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). "The Supreme Court has also put a thumb on the scale: '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise [pendent] jurisdiction .... (citations omitted)'" *Silas*, 55 F.4th at 866.

Since the US Supreme Court decision in *Gibbs*, Congress has codified supplemental jurisdiction in 28 U.S.C. §1367. Under that statute, when a federal court has supplemental jurisdiction under §1367(a), supplemental

jurisdiction should be exercised unless and until subsection (b) or (c) applies. *See* 28 USC 1367 (a). Unsurprisingly, there is no longer a basis for supplemental jurisdiction in the federal courts when the district court has dismissed all claims over which it has original federal jurisdiction. 28 USC 1367 (c)(3). See also *Ameritox, ltd. V. Millennium Laboratories, Inc.*, 803 F.3d 518, 530-532 (11th Cir. 2015).

Here, since the summary judgment on the FMLA claims removed the only basis for original federal question jurisdiction, all the state claims can be and should be dismissed and remanded under 28 U.S.C. §1367(c)(3). If only state claims remain, district courts must examine a "host of factors" to determine if its proper to retain jurisdiction of those claims. Those factors include: "judicial economy, convenience, fairness, and comity." *Bissey v. Ag-Pro Companies, LLC*, 5:22-CV-92-GAP-PRL, 2022 WL 19404237, at *1 (M.D. Fla. Oct. 26, 2022) (quoting *Ameritox*, 803 F.3d 518, 532 (11th Cir. 2015). An additional factor is whether all claims would be expected to be tried together. *Palmer v. Hosp. Auth. of Randolph Cnty*., 22 F.3d 1559, 1569 (11th Cir. 1994).

Curiously here, the district court found that "the balance of factors all point to declining to exercise … jurisdiction" but it chose to exercise its

jurisdiction anyway. Doc. 37 at 14. The district court later explained that its reasoning was based on judicial economy since the lack of damages was fatal to Browning's breach of contract claim. Doc. 46 at 2-3. It did acknowledge, however, that splitting the Browning's breach of contract claim from Bay Radiology's counterclaim would complicate the determination of attorney's fees, *id. at 2*, which is exactly what has happened. Bay Radiology has sought over $100,000 in attorney's fees from Browning in this case based on the district court's ruling, Doc. 58, but has not filed or brought its remanded counterclaim in state court. Thus, limiting any possible fee award against it and effectively gaming the legal system.

It is not judicially economical to split state court breach of contract actions and counterclaims based upon the same set of facts. Judicial economy is best "served when issues of state law are resolved in state courts." *Sabal Constr. & Roofing, LLC v. W. World Ins. Co.*, 2:20-CV-989-SPC-KCD, 2022 WL 16725364, at *1 (M.D. Fla. Oct. 21, 2022). It is also fundamentally unfair to split state court claims as the district court has done here. *Id*. Both parties deserve to be able to fully vet these state law issues in state court.  To promote comity and justice between the parties, especially when the federal claim has been dismissed before trial, all state claims should have been remanded for

further resolution. The district court's refusal to do so and follow this Court's instructions on limited jurisdiction is error and should be reversed.

## CONCLUSION

For the foregoing reasons, Browning respectfully requests that this Court (1) reverse and remand for further consideration the district court's Rule 37 sanctions against Browning; (2) reverse and remand the district court's summary judgment against Browning on his FMLA retaliation and interference claims; and (3) if this Court determines that the district court did not abuse its discretion in dismissing Browning's claims under Rule 37 and that Bay Radiology is due summary judgment on Browning's FMLA claims, reverse and remand the district court's decision to accept supplemental jurisdiction over Browning's breach of contract claim but not Bay Radiology's counterclaim.

Dated: February 28, 2024                    Respectfully submitted,

                                    By:    /s/ Robert C. Jackson
                                            Robert C. Jackson
                                            D. Ross McCloy, Jr.
                                            William Platt, IV
                                            Hand Arendall Harrison Sale, LLC
                                            304 Magnolia Avenue
                                            Panama City, Florida 32401
                                            (850) 769-3434
                                            *Attorneys for Plaintiff-Counter*
                                              *Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 10,160 words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

HAND ARENDALL HARRISON SALE

*/s/ Robert C. Jackson*
Robert C. Jackson, Esquire
Florida Bar No: 149519

Attorneys for Appellant

## CERTIFICATE OF SERVICE

In accordance with F. R. App. P. 25(a)(2)(B), I hereby certify that I have this day served the foregoing document via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with Notice of Docket Activity addressed to all parties as follows:

>Daniel E. Harrell, Esq.
>Jeremy C. Branning, Esq.
>P.O. Box 13010
>Pensacola, FL 32301
>dharrell@clarkpartington.com
>jbranning@clarkpartington.com

This 28th day of February 2024.

>/s/ Robert C. Jackson
>_____
>ROBERT C. JACKSON
>D. ROSS MCCLOY, JR.
>WILLIAM PLATT, IV
>HAND ARENDALL HARRISON
>   SALE, LLC
>304 Magnolia Avenue
>Panama City, Florida 32401
>(850) 769-3434
>Attorneys for Plaintiff-Counter
>   Defendant-Appellant

51