No. 23-13842

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

JASON M. BROWNING, M.D.,

*Plaintiff-Counter Defendant-Appellant,*

v.

BAY RADIOLOGY ASSOCIATES, P.L., *et al.*,

*Defendants-Counter Plaintiffs-Appellees,*

---

ON APPEAL FROM THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

---

**APPELLEES' ANSWER BRIEF**

---

**DANIEL E. HARRELL**
CLARK PARTINGTON
125 East Intendencia Street
Pensacola, FL  32502
Telephone: (850) 434-9200

*Counsel for Defendants-Counter Plaintiffs-Appellees*

Dated:  March 28, 2024

*Jason M. Browning, M.D. v. Bay Radiology Associates, P.L., et al.,*
*Case No. 23-13842*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Defendants-Counter Plaintiffs-Appellees submit this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this proceeding:

A.    Bailey, Jr, M.D., Carl G.

B.    Bay Radiology Associates, P.L.

C.    Billingsley, M.D., Emily D.

D.    Branning, Esq., Jeremy C.

E.    Browning, M.D., Jason M.

F.    Clark Partington

G.    Hand Arendall Harrison Sale

H.    Harrell, Esq., Daniel E.

I.    Henry, The Honorable William

J.    Jackson, Esq., Robert C.

K.    Logue, D.O., Lloyd G.

L.    McCloy, Jr., Esq., D. Ross

M.    Platt, IV, Esq., William Z.

N.    Presser, M.D., Gregory A.

O.    Ramey, M.D., Scott L.

P.      Rushing, III, W. Daniel

Q.      Spencer, Esq., Andrew M.

R.      Weintritt-Davis, M.D., Lindsey

S.      Winsor, The Honorable Allen

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Bay Radiology Associates, P.L., is a Florida profit corporation that is not traded publicly.  No publicly held corporation owns 10 percent or more of any stake or stock in Bay Radiology Associates, P.L.  All other Appellees are individuals.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not warranted because the record is sufficiently developed to assess the merits of the appeal on the parties' written arguments alone.

## PREFATORY STATEMENT AND BRIEF CONVENTIONS

In this brief, Appellant, Jason M. Browning, M.D., will be referred to as "Browning[.]" Appellee, Bay Radiology Associates, P.L, will be referred to as "Bay Radiology[.]" All other Appellees will be identified by their individual names, if necessary, and the Appellees, if referred to collectively, will be referred to as "Appellees[.]"

References to the record contained in Browning's appendix shall be in the form of "Appx. [Vol] at [Page]:[Line, if applicable], Doc. [Docket Document Number] at [Page]." If the document is a deposition transcript, the page number in the "Doc." citation will refer to the original page number at the top right of the transcript. Appellees accept the Browning Appendix and do not intend to file a supplemental appendix.

In addition, Appellees elect under Federal Rule of Civil Procedure 28(b) and 11th Circuit Rules 28-1(f) and 28-2 to accept Browning's statement of subject matter and appellate jurisdiction, nature of the case, course of proceedings and disposition below, and statement of the standard of review. However, with respect to the

i

statement of the case, Appellees will provide their own statement of facts which includes additional material Browning's brief overlooks.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ..........................................................1

CORPORATE DISCLOSURE STATEMENT .........................................................3

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

PREFATORY STATEMENT AND BRIEF CONVENTIONS.............................. i

TABLE OF CONTENTS........................................................................................ iii

TABLE OF CITATIONS .......................................................................................v

STATEMENT OF THE ISSUES PRESENTED....................................................1

APPELLEE'S STATEMENT OF THE FACTS ......................................................2

SUMMARY OF THE ARGUMENT ..................................................................10

ARGUMENT .......................................................................................................12

   I.   The District Court Did Not Abuse its Discretion When it Determined that Browning's Failure to Disclose Tail Insurance Premiums Damages Warranted Exclusion of Evidence of these Damages under Rule 37(c)(1). .........................12

      A.    Browning did not disclose tail insurance premiums as damages pursuant to its Rule 26 obligations or in response to directed interrogatories about damages...................................................................................................................14

      B.   The District Court properly concluded that Browning's failure to disclose tail insurance premium damages was not substantially justified or harmless. .17

      C.   Browning's characterization of the District Court's sanctions as a "complete dismissal of three of four claims" misrepresents the District Court's ruling. ...................................................................................................................22

   II.   The District Court Properly Granted Summary Judgment on Browning's FMLA Claims....................................................................................................26

      A.    The District Court properly considered the relevant material facts. ......26

      B.   The District Court correctly determined that Browning had not presented a genuine issue of fact as to whether Bay Radiology's termination decision was a pretext for discrimination. .................................................................................33

      C.   Browning's argument that he can present a "convincing mosaic of evidence of discrimination" is not properly before this Court because Browning did not raise this theory with the District Court................................39

III.    The District Court Did Not Abuse its Discretion by Accepting Supplemental Jurisdiction over Browning's Breach of Contract Claim. .............41

CONCLUSION ....................................................................................................45

CERTIFICATE OF COMPLIANCE........................................................................46

CERTIFICATE OF SERVICE ................................................................................47

# TABLE OF CITATIONS

## CASES

*Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331
(11th Cir. 2004) ............................................................................ 22, 39

*Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) .....42

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049
(11th Cir. 1994) .......................................................................................23

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343  (1988) .................................. 42, 43

*City of Chicago v. Intl. College of Surgoens*, 522 U.S. 156 (1997) .......................43

*Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) .....................34

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ...................37

*Corley v. Mercedes-Benz U.S. Int'l, Inc.*, No. 21-11986, 2022 WL 2345808,
(11th Cir. June 29, 2022) .......................................................................39

*Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1363
(11th Cir. 1999) ......................................................................................34

*Diamond Tr. u/a/d 10/28/2005 v. Diamond*, No. 21-11985, 2022 WL 4493035
(11th Cir. Sept. 28, 2022) .......................................................................23

*Dorey v. Dorey*, 609 F.2d 1128, 1135-36 (5th Cir. 1980) ......................................12

*Douse v. Delta Air Lines Inc.*, No. 21-13499, 2023 WL 6636194
(11th Cir. Oct. 12, 2023) .........................................................................23

*Fed. Sav. & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 373 n.3 (11th Cir. 1987)40

*Friedman v. N.Y. Life Ins. Co.,* 985 So. 2d 56, 58 (Fla. 4th DCA 2008) ...............42

*Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020).......35

*Grant v. Elmore County Board of Education*, No. 22-11448, 2023 WL 309309
(11th Cir. Jan. 19, 2023) .................................................................................. 39, 40

*Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986)...................................20

*Jackson v. Ala. State Tenure Comm'n.*, 405 F.3d 1276, 1289 (11th Cir. 2005)......34

*Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1324 n.16
(11th Cir. 1998)........................................................................................................34

*Lans v. Stuckey*, 203 F. App'x 956, 959–60 (11th Cir. 2006) ................................28

*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)...................23

*Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010)............ 12, 13

*Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984) ........28

*Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d, 1, 3 (1st Cir. 1983).......40

*Powell v. Siegal*, 447 F. App'x 92, 94 (11th Cir. 2011) .........................................23

*Sabal Construction & Roofing, LLC v. Western World Insurance Company*,
No. 2:20-CV-989-SPC-KCD, 2022 WL 16725364 (M.D. Fla. Oct. 21, 2022) ......44

*Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147
(11th Cir. 2006)........................................................................................................12

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) ...............45

*Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022)............. 42, 43

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)................................34

*Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 370 (11th Cir. 2009) ..............23

*United Mine Workers of America v. Gibbs,* , 383 U.S. 715,(1966).................. 42, 43

*United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990)................................20

*Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir.2001) ...........................45

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) .....................42

*Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273
(11th Cir. Aug. 3, 2022) ...............................................................................13

## **STATUTES**

28 U.S.C. § 1367 ...........................................................................................42

## **REGULATIONS**

29 C.F.R. § 825.307(b)(1) ...............................................................................37

## **RULES**

Fed. R. Civ. P. 16(b) .......................................................................................24

Fed. R. Civ. P. 26(a) .................................................................................. 12, 13

Fed. R. Civ. P. 26(a)(1)(A)(iii) ........................................................................12

Fed. R. Civ. P. 26(e)(1)(A) ..............................................................................13

Fed. R. Civ. P. 37 ...........................................................................................12

Fed. R. Civ. P.37(b)(2) ....................................................................................22

Fed. R. Civ. P. 37(b)(2)(A) ..............................................................................23

Fed. R. Civ. P. 37(c) .......................................................................................13

Fed. R. Civ. P. 37(c)(1) ......................................................................... 13, 22, 23

## STATEMENT OF THE ISSUES PRESENTED

This appeal presents the following issues for review:

I.      Whether the District Court abused its discretion by excluding evidence of tail insurance premium damages pursuant to Rule 37(c)(1) because Browning failed to disclose this category of damages or a computation of these damages in either (1) his Rule 26 initial disclosures, or any supplement thereto, and (2) his responses to specific interrogatories on damages, or any supplement thereto.

II.     Whether the District Court erred in granting summary judgment on Browning's FMLA retaliation and interference claims upon a finding that Browning could neither present evidence of damages nor demonstrate that a genuine issue of material fact existed as to whether the reason for his termination was pretextual.

III.    Whether the District Court abused its discretion in determining that principles of judicial economy warranted the exercise of supplemental jurisdiction over Browning's breach of contact claim.

## APPELLEE'S STATEMENT OF THE FACTS

Browning's Statement of Facts omits or elides important factual details. Appellees provide the following one in its stead.

### *Background*

Bay Radiology is an independent medical service provider that provides radiology services in the Panama City, Florida region.  Appx. Vol. 2, pp. 32-33; Doc. No. 18-1, pp. 2-3.  Browning is a former partner physician with Bay Radiology. Appx. Vol. 2, p. 33; Doc. No. 18-1, p. 3.   Bay Radiology employed Browning pursuant to an Employment Agreement. Appx. Vol. 2, pp. 33 and 42; Doc. No. 18-1, pp. 3 and 12. Pursuant to a vote of the partners, Bay Radiology terminated Browning's employment for cause on September 13, 2019.  Appx. Vol. 2, p. 33; Doc. No. 18-1, p. 3.

For many years and until September 23, 2019, Bay Radiology was the exclusive provider of radiology services to the two major hospitals in Panama City— Ascension Sacred Heart Bay Hospital ("Bay Hospital") and Gulf Coast Regional Medical Center ("GCRMC").  *Id*.  Additionally, Bay Radiology provides radiology services for its Women's Imaging Center, as well as other independent practices.  *Id.*

### *Impact of Hurricane Michael*

In October 2018, Hurricane Michael made landfall in the Panama City region and created significant difficulties for Bay Radiology.  Appx. Vol. 2, p. 34; Doc. No.

18-1, p. 4. The Women's Imaging Center was damaged significantly; Intervasc—a facility dedicated to Bay Radiology's interventional radiology practice—was rendered inoperable; and the local hospitals for which Bay Radiology's physicians provided services suffered significant damages that heavily disrupted operations for a number of months. *Id.* There were significant financial repercussions for Bay Radiology. *Id.* In addition, because of these issues, five of the thirteen physicians with Bay Radiology made the decision to leave the practice. *Id.* No departing physician at that time received any buy-out for their interest in the practice because there was no positive value of the practice's entities. *Id.*

Over the next several months, as the Panama City area recovered from Hurricane Michael, Bay Radiology attempted to ensure it could continue to employ its staff and physicians, although certain staffing cuts were inevitable. Appx. Vol. 2, pp. 6-7; Doc. No. 18-1, pp. 4-5. Due to the decrease in number of physicians, Bay Radiology began to have difficulty servicing its obligations to Bay Hospital and GCRMC. *Id.* In summer 2019, Bay Radiology entered into discussions with GCRMC regarding the continuation of providing services at that facility, and Bay Radiology discovered that GCRMC was also engaged in discussion with other groups, including Envision Physician Services ("Envision"), about becoming the exclusive provider of radiology services for that facility. *Id.* By late July, it became clear that the discussions with GCRMC were not going to be fruitful and, ultimately,

Bay Radiology gave notice to GCRMC of its intent to cease providing services at GCRMC effective September 23, 2019.  *Id.*

### Browning's FMLA Request

On August 22, 2019, Browning informed Dr. Lloyd Logue ("Dr. Logue")— President of Bay Radiology—that he was suffering from a serious medical condition and was not going to be able to work on August 23 or August 26.  Dr. Logue shared this information with Bay Radiology's CEO, Mr. Dan Rushing ("Mr. Rushing"). Appx. Vol. 2, p. 35; Doc. No. 18-1, p. 5.  Based on this information, Mr. Rushing immediately contacted Browning about his rights under the Family and Medical Leave Act ("FMLA"), and provided Browning with the necessary FMLA certification paperwork.  *Id.*  After this contact, Browning also indicated that he needed leave for "child bonding."  *Id.*  Within the appropriate timeframe, Browning submitted the required paperwork for his FMLA leave.  *Id.*  Bay Radiology approved his request for FMLA leave for "child bonding," and it tentatively approved his FMLA leave for his serious medical condition subject to obtaining a second medical opinion.  *Id.*

### Browning Accepts New Position and Does Not Inform Bay Radiology

During the week of September 5, 2019, Bay Radiology began to receive information that Browning had agreed to work for Envision and provide radiology services at GCRMC for Envision beginning on September 24, 2019—after Bay

4

Radiology was scheduled to stop providing services at GCRMC.  Appx. Vol. 2, pp. 35-36; Doc. No. 18-1, pp. 5-6.   Specifically, Logue was informed by multiple individuals who worked for GCRMC that Browning was scheduled to continue to work at GCRMC for Envision after Bay Radiology stopped providing services on September 23, 2019.  Appx. Vol. 2, pp. 86-88; Doc. No. 18-2, pp. 2-4.  One of the individuals providing this information was the Director of Radiology Services.  *Id*. This information surprised Bay Radiology because Browning had not provided any information to the practice about this decision and he was supposed to be on leave during that time.   Appx. Vol. 2, pp. 35-36; Doc. No. 18-1, pp. 5-6.  Over the next several days, Bay Radiology reached out to Browning on four separate occasions requesting that he provide information on this issue.  *Id.*  Browning never responded to Bay Radiology's request for information.  *Id.*

On September 12, 2019, Logue received a copy of the Envision shift schedule for GCRMC for the week of September 24, 2019—the week after Bay Radiology would cease providing services for GCRMC.  Appx. Vol. 2, p. 36; Doc. No. 18-1, p. 6; Appx. Vol. 2, pp. 86-90; Doc. No. 18-2, pp. 2-6.  Browning was listed on the schedule as a radiologist providing services for GCRMC.  *Id.*  At this point, it became clear to Bay Radiology that Browning had taken another position outside of Bay Radiology and, without providing any notice to Bay Radiology, he had agreed to provide services for another physician group as of September 24, 2019.  *Id.*

### *Bay Radiology Terminates Browning's Employment*

Section 1.3 of Browning's Employment Agreement provides that "Physician shall work full-time for Employer and shall devote his or her best efforts and skills to performance of his or her duties hereunder, and agrees that he or she shall not engage in the practice of medicine except on behalf of Employer, nor engage in the practice of medicine for his or her private benefit or for the benefit of any corporation, partnership, limited liability company, hospital, clinic, or any other facility or firm except the Employer."   Appx. Vol. 2, pp. 36, 42; Doc. No. 18-1, pp. 6, 12.

Upon discovering that Browning had agreed to work for Envision providing services at GCRMC as of September 24, 2019, Logue and Rushing agreed that Browning's agreement to begin working for another employer was a violation of Section 1.3 of his Employment Agreement, especially in light of the fact that he would not respond to specific questions from Bay Radiology's management about this issue.  Appx. Vol. 2, pp. 36-37; Doc. No. 18-1, pp. 6-7.  Accordingly, on September 13, 2019, Rushing drafted an "Action By Written Consent" document to circulate to the remaining shareholders, which was necessary to terminate Browning's employment with Bay Radiology.  *Id.*  Each of the remaining shareholders executed this "Action By Written Consent" document, thereby providing the necessary two-thirds' vote to terminate Browning's employment

immediately for cause.  *Id.*; Appx. Vol. 2, pp. 79-81; Doc. No. 18-1, pp. 49-51.  Upon

full agreement of the partners, Bay Radiology issued a letter of termination to

Browning, indicating that Bay Radiology was terminating his Employment

Agreement for cause.  Appx. Vol. 2, pp. 36-37; Doc. No. 18-1, pp. 6-7.

On September 24, 2019, Browning began providing radiology services at

GCRMC for Envision.  Appx. Vol. 2, pp. 100-101; Doc. No. 18-3, pp. 9-10. This

start date is consistent with the schedule that was provided to Dr. Logue.

### *Browning's Discovery Deficiencies*

On February 15, 2022, Browning served his Rule 26(a)(1) Initial Disclosures.

Regarding damages, his disclosures provided the following:

> The following is a description of the categories of damages
> claimed by Plaintiff, as best that Plaintiff can determine at this
> stage of litigation:
>
> (a)    compensatory damages suffered by Plaintiff, including
>          emotional damages resulting from the termination;
>
> (b)    contract damages resulting from the termination;
>
> (c)    punitive damages to the extent permitted by law;
>
> (d)    attorneys' fees incurred by Plaintiff; and
>
> (e)    damages described in Plaintiffs expert report, if any.

*See* Appx., Vol. 4, pp. 203-208; Doc. 18-10 at p. 6.  There is nothing in these

disclosures that discusses tail insurance premiums as a category of damages or

provides a computation of such damages.  Browning never supplemented these disclosures.

Through written discovery requests, Bay Radiology sought additional information about Browning's damages.  Specifically, Bay Radiology sent interrogatories about damages and only received the following information:

> **Interrogatory No. 3:**  Identify and fully describe any and all employee benefits, which have been lost or substantially impaired as a result of the conduct you allege in the Amended Complaint, the cost of your interest in the benefit, and the monetary amount of the loss or impairment, which you claim.
>
> **ANSWER:** *Damage calculations are in process and will be incomplete until Bay Radiology provides the financial information requested, but in general damages include the following:*
> - *Monetary difference in value between the 2 jobs benefits*
> - *Ownership in real estate with no mortgage valued at well over 2 million*
> - *My percent of the insurance claim post Hurricane Michael*
> - *Monetary difference between former and current compensation:*
>     - *o Total comp 2018 470K*
>     - *o Current salary 425K.*
> - *Loss of all LLC income, salary, or compensation since 2019 for Bay Rad, WIC, Intervasc, & Rad real estate*
> - *All other damages listed in my Rule 26 disclosures.*
>
> **Interrogatory No. 13:**  Identify with specificity and particularity each and every element and item of damages (including monetary amounts) that you contend you are entitled to recover from the Defendants, and explain how each item of damages was calculated.
>
> **ANSWER:** *Please see Response to Interrogatory No. 3*

Appx. Vol. 4 at pp. 211-21; Doc. 18-11 at pp. 3-4, 9. Browning never provided any specific information or calculation of his damages and never substantively responded to Bay Radiology's request that he "identify with specificity and particularity each and every element and item of damages (including monetary amounts) that [he] contend[s] [he is] entitled to recover from the Defendants." Moreover, although the Federal Rules of Civil Procedure and the District Court's orders require ongoing supplementation of interrogatory responses, Browning never supplemented these interrogatory answers.

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment on Browning's FMLA claims and Browning's breach of contract claim for the reasons set forth in the District Court's Final Order and for other reasons disclosed by the record. This Court should affirm that order.

First, the District Court did not abuse its discretion by excluding evidence of tail insurance premium damages pursuant to Rule 37(c)(1). Browning failed to disclose these damages in either his Rule 26 disclosures or in response to interrogatories asking directly for that same information. The District Court correctly determined that this failure to disclose was neither substantially justified nor harmless because Browning could not demonstrate why he failed to disclose these damages and the failure to disclose would prejudice Bay Radiology. Contrary to Browning's argument, the District Court did not dismiss his claims or enter a default judgment against him, requiring a finding of willfulness or bad faith. Instead, the District Court simply excluded the evidence of tail insurance premiums, which is a lesser sanction that does not require a finding of willfulness or bad faith. That exclusion laid the factual foundation for the District Court's ultimate grant of summary judgment, but Browning is mistaken when he characterizes that judgment itself as a sanction.

10

Second, the District Court did not err in granting summary judgment in favor of Appellees on Browning's FMLA and breach of contract claims. Because the District Court did not abuse its discretion in excluding tail insurance premium damages and Browning can point to no other evidence of damages, Browning's claims fail because he cannot prove any damages—a necessary element of both his FMLA and breach of contract claims. Furthermore, Browning cannot present sufficient evidence that the reason for his termination from employment was pretextual. Accordingly, for either reason or both reasons, the District Court correctly granted summary judgment in favor of Appellees.

Finally, the District Court did not abuse its discretion when it determined that the principles of judicial economy supported the exercise of supplemental jurisdiction over Browning's breach of contract claim. Because the failure to prove damages was equally applicable to both the FMLA claims and the breach of contract claim, the District Court determined it would preserve judicial economy for it to apply straightforward Florida law and rule on Browning's breach of contract claim. Although Browning disagrees with this determination, he cannot demonstrate any abuse of discretion in reaching it. The District Court's decision should not be disturbed.

## **ARGUMENT**

**I.    The District Court Did Not Abuse its Discretion When it Determined that Browning's Failure to Disclose Tail Insurance Premiums Damages Warranted Exclusion of Evidence of these Damages under Rule 37(c)(1).**

This Court's review of a District Court's decision to impose sanctions under Rule 37 for discovery violations is "***sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record.***" *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010) (quotation marks omitted) (emphasis added). "A district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (quotation marks omitted).  To reverse, this Court must be "left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *Dorey v. Dorey*, 609 F.2d 1128, 1135-36 (5th Cir. 1980).

A party must disclose "a computation of each category of damages claimed by the disclosing party," among other information.  Fed. R. Civ. P. 26(a)(1)(A)(iii). And a party must supplement its Rule 26(a) disclosures, or its other discovery responses, if it "learns that in some material respect the disclosure or response is

incomplete or incorrect" and the information has not otherwise been made known to the other parties. Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c) provides for sanctions against a party that fails to disclose information required under Rule 26(a) or (e). Among other sanctions, the district court may exclude a category of damages that was not properly disclosed. "In *Mee Industries*, for example, [this Court] affirmed the exclusion of the plaintiff's loss-of-goodwill-damages theory based on lack of notice in the required Rule 26 disclosures and the interrogatories of both the theory and the calculation of damages." *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *3 (11th Cir. Aug. 3, 2022) (citing *Mee Indus.*, 608 F.3d at 1221-22). Sanctions are not warranted, however, if the "failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Here, Browning must demonstrate that it was an abuse of the District Court's discretion to exclude evidence of tail insurance premium damages under Rule 37(c)(1) after he failed to disclose these damages in either initial disclosures, any supplement thereto, or in response to direct interrogatories on damages. In attempting to do so, however, Browning misconstrues the District Court's determination, mischaracterizes the nature of the sanction imposed by the District Court, and downplays the District Court's analysis of whether his failure to disclose was substantially justified or harmless. In short, Browning cannot demonstrate that

the District Court abused its discretion in excluding undisclosed evidence of tail insurance premium damages. The District Court's decision is due to be affirmed.

**A.  Browning did not disclose tail insurance premiums as damages pursuant to its Rule 26 obligations or in response to directed interrogatories about damages.**

Although Rule 26(a) requires a party to disclose "a computation of each category of damages claimed by the disclosing party," it is undisputed that Browning did not disclose tail insurance premiums as a category of damages in his Rule 26 disclosures. It is also undisputed that Browning did not disclose tail insurance premiums as a measure of damages in response to direct interrogatories about damages. Finally, it is undisputed that, despite the continuing obligation to correct incomplete disclosures under Rule 26(e), Browning never supplemented either his Rule 26 disclosures or his interrogatory responses to put Bay Radiology on notice of his claim for tail insurance premiums as damages.

Browning seeks to excuse this failure to disclose, however, by suggesting that Bay Radiology was "aware" of Browning's claim to tail insurance premiums as damages. Browning's argument relies exclusively on the fact that his counsel presented Dan Rushing, Bay Radiology's CEO, a purported copy of a tail insurance premium invoice during his deposition (a deposition that occurred one day before the discovery deadline). A review of Mr. Rushing's deposition, however, reveals that Browning did not make this purported invoice an exhibit to the deposition and

counsel for Bay Radiology objected to its use based on the lack of prior disclosure. Appx. Vol. III at p. 159. Likewise, Mr. Rushing specifically testified that he had no recollection of ever seeing the purported invoice and no recollection of Browning ever seeking reimbursement from Bay Radiology for tail insurance premiums. *Id.*

Nonetheless, in an effort to forestall his own failure to disclose, Browning suggests that this deposition interaction somehow put Bay Radiology on notice of these alleged damages despite his failure comply with the rules of civil procedure. This position is unsustainable. First, nothing in this deposition interaction suggests that it was sufficient to make Bay Radiology "aware" of an undisclosed claim for damages. The appropriate means of making a counter-party aware of a claim is to plead that claim, and provide responsive information about it in required disclosures and discovery responses—precisely as Browning did *not* do here. Bay Radiology specifically requested that Browning "[i]dentify with specificity and particularity each and every element and item of damages (including monetary amounts) that [he] contended [he was] entitled to recover from [Bay Radiology]." Appx. Vol. 4 at pp. 211-21; Doc. 18-11 at pp. 3-4, 9. This type of interrogatory is designed to avoid exactly what occurred in this case—lack of knowledge about a specific category of damages for which additional discovery likely would be necessary. Browning cannot hide from the fact that he never disclosed tail insurance premiums as a category of damages and never disclosed any amount in response to this

interrogatory or in any other disclosure. Browning's failure to disclose is only cured through proper supplementation, not through an off-the-cuff set of objectionable deposition questions about a previously undisclosed document that gives no indication that a new category of damages was being asserted.

If anything, this deposition interaction should have put Browning on notice of his lack of prior disclosure and the requirement that he supplement his disclosures and interrogatory responses. Bay Radiology's objection to the questions posed to Mr. Rushing based on the lack of production, at a minimum, should have reminded Browning of the requirement to supplement his disclosures and interrogatory responses. But Browning never did so and, therefore, failed to comply with basic procedural requirements. The simple truth is that Browning had an obligation to disclose these alleged damages, failed to disclose them, and now seeks to avoid the consequences of that failure by asserting that it was the District Court that erred, not him. This Court should decline to endorse such sandbagging of the trial process.

Browning also suggests that the District Court erred by "failing to address" the fact that the alleged tail insurance invoice was disclosed to Bay Radiology in Mr. Rushing's deposition. Strangely, it appears that Browning is suggesting that the District Court's failure to specifically mention the deposition interaction with Mr. Rushing somehow results in a clearly erroneous finding of fact that requires reversal. But even a cursory review of the District Court's Order demonstrates that the focus

of the District Court's determination was the undisputed failure to disclose tail insurance premium damages, including a computation of said damages, in any Rule 26 disclosures or in response to direct interrogatories on damages. The District Court found that these failures to disclose were a basis for the exclusion of such damages. The failure to discuss Browning's limited questioning about a previously undisclosed tail insurance premium invoice in a deposition does not change the fact that Browning's Rule 26 disclosures and interrogatory responses on damages contain no disclosure of these purported damages. Browning was required to disclose and identify these alleged damages in those disclosures. He did not. There is simply no erroneous "finding of fact" in the District Court's order that requires reversal.

### B.    The District Court properly concluded that Browning's failure to disclose tail insurance premium damages was not substantially justified or harmless.

Browning argues that the District Court failed to sufficiently analyze whether his failure to disclose the tail insurance premium damages was substantially justified or harmless. In making this argument, Browning recognizes that this Court has not established a formal test to determine whether a failure to disclose is substantially justified or harmless. But he ignores that the District Court has significant discretion in making its determination, and that it is his burden to prove that the District Court abused that discretion.

Browning's suggestion that the District Court did not conduct "any detailed analysis of harmlessness or substantial justification" essentially ignores the District Court's Order, which specifically provides:

> Browning has not shown his failure to disclose the tail insurance costs was substantially justified or harmless. He has not shown why he failed to disclose this information or supplement his disclosures in the nearly year-long discovery period. Permitting Browning to disclose this type of damages now—after Bay Radiology spent the last year litigating based on other types of damages, and this court granted multiple extensions during which [Browning] could have supplemented the initial disclosures—would prejudice Bay Radiology. Bay Radiology would have no chance to respond to this undisclosed information unless discovery was reopened, and reopening discovery would impose heightened costs on Bay Radiology—further prejudicing it. Accordingly, in my discretion, I find that Browning's failure to disclose the tail insurance premiums as a type of damages sought—and his accompanying failure to disclose a damages calculation—warrants exclusion of these damages under Rule 37(c)(1).

Appx. Vol. V, pp. 109-110; Doc. No. 37, pp. 7-8.   Furthermore, addressing Browning's post-summary judgment briefing request that the District Court reopen discovery so that he could then cure his failure to disclose these damages, the District Court stated that:

> Browning has not shown good cause to reopen discovery based on his failure to disclose the damages and calculation during the nearly year-long discovery period that the court permitted. He mentions that discovery "has been a challenge for document production because both parties had property destroyed in Hurricane Michael." ECF No. 32 at 2. But he never explains how that hurricane impacted his ability to disclose documents relating

> to the purchase of tail insurance in the fall of 2019—nearly one
> year after the hurricane hit in October 2018.

Appx. Vol. V, p. 114; Doc. No. 37, p. 12.  It is beyond question that the District

Court considered the issue of harmlessness and substantial justification.

Accordingly, Browning's argument essentially challenges the District Court's

conclusion, not whether the District Court abused its discretion in reaching that

conclusion by misconstruing its proper role, ignoring or misunderstanding the

relevant evidence, or basing its decision upon considerations having little factual

support.

For example, Browning suggests that the District Court failed to consider the

appropriate impact that Hurricane Michael had on this case and his ability to disclose

his tail insurance premium damages.  Browning argues that, because of Hurricane

Michael, "[r]ecords are destroyed or lost forever" and it is "not unusual for one

specific document to be difficult to find."  This argument cannot survive exposure

to the facts of the case.  It is undisputed that Browning remained employed with Bay

Radiology for approximately eleven months after Hurricane Michael impacted the

Panama City area. Accordingly, Browning did not allegedly purchase tail insurance

until well after Hurricane Michael, and any damage to property stemming from

Hurricane Michael could not have impacted his ability to collect or obtain

information necessary to appropriately disclose these purported tail insurance costs

as a component of his damages. In short, Hurricane Michael could not have

destroyed a record of a tail insurance premium that did not exist until over a year after Hurricane Michael.

Moreover, there is no record evidence to support Browning's claim that Hurricane Michael caused his lack of disclosure of tail insurance premiums as damages. While Browning's counsel raised this argument in a motion to reopen discovery and at the summary judgment hearing, there is no evidentiary support for that argument through an affidavit, deposition testimony, or otherwise. The law is clear that arguments of counsel are not evidence. *See, e.g., United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990)(recognizing that "statements and arguments of counsel are not evidence"); *see also Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) ("[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists."). Browning had the burden to show his non-disclosure was substantially justified, and his counsel's bare assertion that Hurricane Michael impacted his ability to disclose the information in question was not sufficient.

Even though Browning had no evidence to support this position, the District Court nonetheless considered this argument at the summary judgment hearing and directly questioned Browning's counsel at hearing as to why disclosure of tail insurance premiums as a category of damages was not made. Even taking at face value the claim that Hurricane Michael disrupted the ability to obtain documents

(although the timing of Hurricane Michael makes this assertion impossible), the District Court instead focused on the failure to disclose generally, asking Browning's counsel:

> Why didn't you say, 'We are going to assert a claim for the tail policy. It was roughly $30,000. We have lost the policy in the hurricane. We will get it to you as soon as we can, or something like that.' It just seems like I see this more than I should where things get missed and it ends up creating major problems at the end of a case. I do think you have got a problem there.

Appx., Vol. VI, p. 81.

A review of the District Court's Order, coupled with the District Court's questioning at the hearing, demonstrates that the District Court indeed conducted an appropriate analysis on the issue of harmlessness or substantial justification and did not abuse its discretion in determining that the Browning did not demonstrate that the "failure to disclose the tail insurance costs was substantially justified or harmless." Browning argues with the ultimate conclusion reached by the District Court, but he does not show why that conclusion was an abuse of discretion.

Finally, prior to this appeal, Browning did not raise any issue with the District Court regarding (1) the District Court's purported "inaccurate review of the harmlessness and justified standards[,]" or (2) any purported "clearly erroneous facts" relied on by the District Court. Although Browning filed a motion to amend judgment seeking reconsideration as to parts of the District Court's Order, he did not raise these issues with the District Court. Browning's failure to raise these arguments

before the District Court means they are not preserved for appeal. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."). Consequently, even if there was merit to Browning's arguments—which there is not—the failure to raise these arguments before the District Court is fatal to raising his arguments in this appeal.

### C. Browning's characterization of the District Court's sanctions as a "complete dismissal of three of four claims" misrepresents the District Court's ruling.

In an attempt to invoke a more favorable standard—one requiring willfulness or bad faith—Browning next attempts to characterize the District Court's ruling as a sanction of "dismissal" or a "default judgment." This mischaracterizes the District Court's ruling. In fact, the District Court's Order very clearly does not dismiss any claims or enter default judgment as a discovery sanction. Instead, the District Court specifically determined that, in its discretion "Browning's failure to disclose the tail insurance premiums as a type of damages sought—and his accompanying failure to disclose a damages calculation—warrants ***exclusion of these damages under Rule 37(c)(1).***" Appx. Vol. V, p. 110; Doc. No. 37, p. 8 (emphasis added). The District Court excluded evidence due to Browning's failure to disclose—it did not dismiss his case or enter a default judgment pursuant to Rule 37(b)(2), as Browning implies. While the exclusion of this evidence ultimately may have been partially damning to

22

Browning's ability to prove an element of his claims (since he could provide no other evidence of any damages), the District Court's ruling was not a sanction of dismissal or default judgment, but instead was a lesser sanction.

The decisions Browning cites on this issue do not support the proposition that the District Court must have reached a finding of willfulness or bad faith to exclude evidence under Rule 37(c)(1). While this Court has determined that Rule 37(b)(2)(A) requires a finding of willfulness or bad faith to support the sanction of dismissal or default judgment, it has not found that such a finding is necessary for lesser sanctions. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993); *Douse v. Delta Air Lines Inc.*, No. 21-13499, 2023 WL 6636194, at *5 (11th Cir. Oct. 12, 2023); and *Diamond Tr. u/a/d 10/28/2005 v. Diamond*, No. 21-11985, 2022 WL 4493035, at *3 (11th Cir. Sept. 28, 2022). To the contrary, this Court has instructed that "[a] court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994); *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 370 (11th Cir. 2009) (same).

Browning cites *Powell v. Siegal*, 447 F. App'x 92, 94 (11th Cir. 2011), for the proposition that a district court abuses its discretion if it dismisses a case without a clear record of willful contempt and an explicit finding that lessor sanctions would not suffice. But *Powell* involved a completely different set of circumstances in

which the trial court dismissed the plaintiff's complaint pursuant to Rules 16(b) and 41(b) because the plaintiff "filed her amended complaint five days after the court's deadline, failed to appear for a hearing on her lawyer's motion to withdraw, and failed to engage in discovery." *Id.* at 94. Here, the District Court did not dismiss any claim as a sanction or strike any pleadings: its only sanction was to exclude certain evidence. *Powell* is distinguishable.

Finally, as noted above, Eleventh Circuit law is clear that any issue not raised at the trial court level is waived on appeal. Prior to this appeal, Browning did not raise any issue with the District Court suggesting an error for failure to determine willfulness or bad faith. Although Browning filed a motion to amend judgment seeking reconsideration as to parts of the District Court's Order, it did not raise this issue with the District Court and, therefore, cannot raise this unpreserved issue on appeal.

Browning's attempt to portray the District Court's ruling as a sanction of dismissal or default judgment does not accurately reflect the District Court's actual ruling. Because Browning fails to recognize that the District Court specifically characterized its sanction as an "exclusion of evidence" under Rule 37(c)(1) as opposed to a sanction of dismissal or default judgment under Rule 37(b)(2)(A), Browning's argument that the District Court abused its discretion is completely misplaced. It is difficult to understand how Browning could have so badly misread

the District Court's Order, but his misunderstanding of its nature means that his arguments in this appeal lack merit entirely insofar as they depend on the District Court's Order being a sanctions-based dismissal rather than a merits-based summary judgment.

This Court should affirm the District Court's ruling because Browning has not, and cannot, demonstrate that the District Court abused its discretion by excluding evidence of tail insurance premium damages that Browning had not disclosed in compliance with Rule 26 or in response to direct interrogatories on the issue of damages.

## II.     The District Court Properly Granted Summary Judgment on Browning's FMLA Claims.

### A.     The District Court properly considered the relevant material facts.

The District Court determined that "even if Browning had properly disclosed the alleged tail coverage damages, his FMLA claims would still fail."  Appx. Vol. V, p. 110; Doc. No. 37, p. 8.  Browning first attacks this conclusion by suggesting that the District Court either misunderstood or misconstrued relevant facts.  But, as is a consistent theme with Browning's appellate arguments, Browning never raised this issue with the District Court and cannot now raise it for the first time.  More importantly, though, Browning's arguments both misconstrue and misinterpret the District Court's assessment of the record evidence.

First, Browning suggests that the District Court incorrectly stated that "Bay Radiology . . . told its physicians that they were free to discuss joining Envision Physician Services (another radiology practice) after November 1, 2019, which was when Bay Radiology's services with Gulf Coast were to end."[1]  Appx. Vol. V, p. 105; Doc. No. 37, p. 3.  Browning suggests that utilizing this November 1 date implies that the Court may have been confused as to whether Browning joined Envision before Bay Radiology stopped providing services to Gulf Coast Regional

---

[1] For support of this statement, the District Court cites Doc. 18-8 at pp. 23-24.  That particular citation by the Court, however, appears to be a typo, as Doc 18-8 does not support this proposition.  However, Doc. 18-5 at pp. 23-24 does support the Court's factual statement. *See* Appx. Vol. IV, p. 16; Doc. 18-5 at pp. 22-24.

26

Medical Center. A complete review of the District Court's Order, however, demonstrates that (1) the District Court was not incorrect in stating the fact that Bay Radiology informed its physicians that its services with Gulf Coast were set to end on November 1, 2019; and (2) any alleged confusion over this issue did not impact the District Court's pretext analysis.

The record is clear, and there is no factual dispute, that on July 11, 2019, Bay Radiology held a partner's meeting in which its President, Dr. Lloyd Logue, informed the partners that Bay Radiology was "expected to be covering the hospitals [including GCRMC] through November 1st, 2019" and that Bay Radiology needed its partners to show "100 percent dedication to our agreement and contractual -- contractual and probably ethical bind [sic] to cover the hospitals to the best of our ability." Appx. Vol. IV, p. 16; Doc. 18-5 at p. 22:12-20. In this meeting, Dr. Logue informed the physicians that "after we complete our tasks and do what we are legally bound to do, then, you know, we can discuss releasing everybody to do what they need to do to take care of themselves." Appx. Vol. IV, p. 16; Doc. 18-5 at p. 23:6-10. Dr. Logue also recognized in his deposition that, while the expected date of termination of the contractual relationship was November 1, 2019, the actual date termination moved up to September 23, 2019. Appx. Vol. IV, p. 16; Doc. 18-5 at p. 23:11-15. Considering this testimony as a whole, it is clear that the District Court correctly recited the facts about what Bay Radiology told its physician in the summer

27

of 2019.[2]  Browning's suggestion that the District Court possibly was confused on the "actual" date of termination of Bay Radiology's contractual obligations to Gulf Coast Regional Medical Center not only ignores the context of the District Court's recitation of this fact, but also ignores the record evidence as a whole.

Of equal importance, there is no suggestion in the District Court's Order that the date Browning actually joined Envision Physician Services impacted its pretext analysis.  Specifically, the District Court recognizes in footnote 4 of its opinion that Browning argued that he "never did work for Envision while on FMLA leave from Bay Radiology."  Appx. Vol. V, p. 113; Doc. No. 37, p. 11.  Nonetheless, the District Court further held that "even if Bay Radiology had a misunderstanding about the sequence, that would not show pretext."  *Id*.  Considering this determination, Browning's argument on this point leads nowhere, because even if he were correct, the District Court's conclusion would be the same.  Any alleged error on this point is harmless, and not a grounds for reversal.  *See Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984) (holding error was harmless where it did not have any substantial effect on the factual determination in question); *Lans v. Stuckey*, 203 F. App'x 956, 959–60 (11th Cir. 2006) (holding erroneous grant of

---

[2] Notably, Browning's own affidavit confirms that, as of the July 11, 2019 Bay Radiology partners' meeting, "Bay Radiology's last day of service at Gulf Coast was expected to be November 1, 2019."  Appx. Vol. IV, pp. 228-29, Doc. No. 21-1 pp. 2-3.

summary judgment was nevertheless harmless because the ultimate outcome would have been the same).

Second, Browning suggests that the District Court erred by alluding to Dr. Logue's deposition testimony that Dr. Ramey did not "sign on" with a different company while still working for Bay Radiology.  As the District Court noted, this is a direct quote from Dr. Logue's deposition testimony and, importantly, Browning ignores the context of the District Court's use of this fact.  Specifically, the District Court is describing Dr. Logue's testimony as to why he thought there was a difference between Browning and Dr. Ramey's respective situations.  The District Court points out that Dr. Logue believed that Browning was being "dishonest," while Dr. Logue did not have any of the same concerns with Dr. Ramey.  The record is devoid of any evidence that any other physician who ultimately left Bay Radiology—including Dr. Ramey—engaged in the same behavior as Browning, refusing to answer simple questions about whether they had taken another position or about what they intended to do. Likewise, the record is devoid of any evidence that any other physician appeared on another company's work schedule to perform services at GCRMC, or any other facility, for another provider while still supposedly employed by Bay Radiology.  Here, as the District Court recognized, Browning attempts to show differential treatment by comparison to someone who was not similarly situated.

As the District Court recognized in questioning at the summary judgment hearing, the crux of the problem was not specifically when each physician began working for another entity, but instead the difference between how other physicians interacted with Bay Radiology about their intentions as compared to Browning. And counsel for Browning could not identify any specific evidence in the record to support behavior similar to Browning's:

> THE COURT: That's what I'm saying. I'm not sure the record supports this same circumstance thing. That's what I was asking you about. Again, you have one physician who does this all sort of behind the scenes, isn't answering questions, isn't being responsive about what his plans are, just doesn't respond to these inquiries. And for reasons that I don't know, and maybe the record doesn't show, and maybe they don't matter, but, at any rate, it certainly would allow an employer to scratch his or her head and -- but he does that. And then you keep saying these other doctors are in the exact same situation. And I am looking for the evidence that they were doing things, you know, without being upfront about it.
>
> MR. JACKSON: The only difference between the – is that one was on leave and two were not on leave.
>
> THE COURT: But that's what I am asking you. If that's the only difference, I would think there would be evidence that the others were doing this behind the scenes and doing –
>
> MR. JACKSON: Well, the evidence is that they started working -- as per their own affidavit, it takes weeks to get something together and move that, and get hired on the schedule. They started working the same day. The same day. Exactly the same day.
>
> THE COURT: But I feel like maybe you are just avoiding the question, and maybe there is good reason to. But if I had two law

clerks and they both were starting at a law firm the same day, and one told me two months ago, Hey, Judge, I am interviewing with this law firm. It's all going to go great, blah, blah, blah, and I checked references and it was all -- and we had a nice going away party and a cake. And the other one, I just found out from the law firm the Thursday before that they were starting on Monday, right in the middle of their clerk term, wouldn't I be justified in viewing those two things differently? And wouldn't I be way out of line to say, there is no difference between the way those two people –

MR. JACKSON: But there is no evidence in the record that Dr. Bain and Dr. Ramey did that either.

THE COURT: You are saying for your pretext argument that the only difference was that he was on FMLA leave. And I am asking you, where is the evidence that that is the only difference? I would think you would say, Well, because I asked Dr. Ramey, when did you first tell them you were leaving? I didn't tell them. I was doing it secretly. They found out happenstance right before I left, or something like that.

MR. JACKSON: I think that it would be helpful for the Court to understand this is a process that started in July. So in July the physicians talked about leaving and what was going to happen post -- this isn't someone sneaking around. I mean, Dr. Browning and Dr. Ramey and Dr. Bain and Dr. Logue, for that matter, all went to a meeting with Envision to talk about working for Envision. There is no sneaking around or anything like that. There is no dishonesty. The only –

THE COURT: Where was the honesty? That's what -- I'm just not -- I'm not understanding your point about it was all the same. Because you have this thing where they say, What's going on with you? And he says, I'm not telling you. None of your business. And then they find out, well, he's planning to start on the 24th. And maybe they were wrong about that and maybe it was some big misunderstanding. Maybe he never planned to start on the 24th. Maybe he just showed up on the schedule somehow and then coincidently signed a contract on the 23rd and actually

did start on the 24th. Maybe it just unfolded organically that way. But where is the evidence that what he did was just the same as these other doctors but for the FMLA?

MR. JACKSON: Well, so the other physicians, as defense counsel mentioned, they knew that Dr. Bain -- and I think it's in the record -- and Ramey, were looking at a position at Sacred Heart, over at Bay Medical Center.

THE COURT: How did they know that?

MR. JACKSON: Well, because -- because there was discussion about it. Just like they knew that Dr. Browning –

THE COURT: Because these doctors were not doing stuff secretly. They were discussing it. Right?

MR. JACKSON: I think they are all discussing it, Your Honor. There was nothing secret here.

THE COURT: Where is the evidence that your doctor was discussing it?

MR. JACKSON: It's all over the place. . . .

Appx. Vol. VI, at pp. 73-76. This answer clearly ignores the fact that Browning would not respond to simple questions about whether he had already taken another position. Accordingly, Browning cannot cite any record evidence that Dr. Ramey engaged in similar behavior regarding his intent to leave Bay Radiology.[3]

---

[3] Browning suggests that Dr. Ramey "joined Ascension on September 24, 2019, the exact same day as Browning." Although not necessarily pertinent for the reasons discussed above, Browning's record citation for support of this proposition do not actually do so. At best, his record citations indicate that Dr. Ramey began working with Bay Hospital sometime in late September.

Browning's suggestion that the District Court did not construe the facts in a light most favorable to him as the non-movant is simply mistaken.

**B.    The District Court correctly determined that Browning had not presented a genuine issue of fact as to whether Bay Radiology's termination decision was a pretext for discrimination.**

Browning argues that Bay Radiology engaged in "textbook retaliation" when it terminated his employment while he was on FMLA leave.  But this argument completely ignores Bay Radiology's legitimate, non-retaliatory basis for its termination decision—it terminated Browning's employment because, after Browning refused to respond to specific questions regarding his intentions as to other employment, Bay Radiology discovered that Browning had taken a position with Envision and was scheduled to perform work for them at GCRMC as early as September 24, 2019, while Browning was still scheduled to be on FMLA leave at Bay Radiology.  Browning thus must demonstrate that there is sufficient evidence that this reason is pretext in order to avoid summary judgment.  As the District Court ruled, he cannot show this.

To demonstrate that Bay Radiology's proffered legitimate, non-retaliatory reason is merely a pretext, Browning must:

> demonstrate that the proffered reason was not the true reason for the employment decision . . . . [Browning] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Jackson v. Ala. State Tenure Comm'n.*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted).  Generally, to prove pretext, a plaintiff must set forth "sufficient evidence to allow a reasonable finder of fact to conclude that the defendants' articulated reasons for its decision are not believable." *Id.* at 1289 (quotation omitted).  A plaintiff can accomplish this by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation.  *Id.* (quotation omitted). "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). A plaintiff does not establish pretext "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Of equal importance, this Court has long held that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."  *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999).  An employer "'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or retaliatory] reason.'" *Damon*, 196 F.3d at 1363 (citing *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998)).  "The relevant inquiry is whether

the employer in good faith believed that the employee had engaged in the conduct that led the employer to discipline the employee." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020).

The District Court determined that "Browning points to no evidence demonstrating pretext." Appx. Vol. V, p. 112; Doc. No. 37, p. 10. Browning argues that this determination is incorrect because "[the physicians at Bay Radiology] were mad at him because he was taking FMLA, plain and simple." But Browning points to, and has no, evidence to support this assertion. Instead, Browning points to snippets of deposition testimony taken out of context to try to prove this point. For example, Browning argues that Dr. Logue's testimony that Browning "was being 'dishonest' because he said he was committed to Bay Radiology but signed on with another company while on FMLA leave" demonstrates retaliatory intent. A review of that testimony in full context, however, reflects that Dr. Logue was informed by persons working for GCRMC that Browning appeared on a schedule to work at that hospital for Envision during the timeframe that he was also scheduled to be on FMLA leave from Bay Radiology. Appx. Vol. IV, Doc. 18-5 at pp. 47:6-48:19. Dr. Logue then specifically testified that "[t]he fact that he was on FMLA is -- I don't really care about that. It sounds like that he's being dishonest . . . [m]eaning that he's saying 100 percent committed to Bay Radiology. But he's already signed on with another company during an FMLA request." *Id*.

35

As the District Court determined, there is no reasonable interpretation of this testimony to show that Browning's use of FMLA leave was the reason for his termination. Logue's testimony is clear that the crux of the problem was the fact that, while Browning was refusing to answer questions about his intentions with another employer and claiming that he needed to be on leave through at least October, he had apparently taken a job with another company and was scheduled to work for that company as early as September 24. As Logue testified, he felt that this behavior was "dishonest," which, under the circumstances, is entirely reasonable. There is no evidence to support Browning's claim that Logue's "belief" is a pretext for retaliation.

Browning also argues that he was treated differently than other similarly-situated physicians who also ultimately departed Bay Radiology in September of 2019. As discussed above, however, the record is devoid of any evidence that any other physician who ultimately left Bay Radiology engaged in the same secretive and troubling behavior as Browning, refusing to answer simple questions about whether they had taken a position with another company or about what they intended to do. Likewise, the record is devoid of any evidence that any other physician appeared on another company's work schedule to perform services at GCRMC (or anywhere else) while also purportedly still employed by Bay Radiology.

Browning argues that Dr. Bain and Dr. Ramey both started other positions on the same day as he did and, therefore, are similarly situated. This argument ignores the fact that neither Dr. Bain nor Dr. Ramey appear on the same schedule upon which he appears. Appx. Vol. II, p. 87; Doc. No. 18-2, p. 3. Nor is there any evidence that Bay Radiology ever received any similar information about Dr. Bain or Dr. Ramey being scheduled to work for another employer while also still being employed by Bay Radiology. In short, Browning was unable to point the District Court to any record evidence of similar behavior by any other physician, and he is still unable to do so. Consequently, he cannot rely on a similarly-situated person analysis to demonstrate pretext.

Finally, there is also no merit whatsoever to Browning's arguments that other actions demonstrate pretext. Bay Radiology sought a second medical opinion upon Browning's submission of FMLA paperwork, but this is a right to which it is entitled as an employer. *See* 29 C.F.R. § 825.307(b)(1). Evidence of an employer pursuing its rights under the FMLA does not prove pretext. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (explaining that a plaintiff cannot establish pretext "merely by questioning the wisdom of the employer's reason" so long as it "might motivate a reasonable employer"). Likewise, Bay Radiology informed Browning that, when his FMLA ended, he would have to obtain a fitness-for-duty

certification to return to work. This process, again is a right an employer has under the FMLA, not a basis for demonstrating pretext. *See id.*

Browning argues that Dr. Logue "went looking for a copy of Gulf Coast's shift schedule to see if Browning was on it." Again, though, Browning is mischaracterizing Logue's testimony: Dr. Logue testified that he "was informed by multiple individuals who worked for GCRMC that Dr. Browning, one of Bay Radiology's physicians, was scheduled to continue to work at GCRMC for Envision after Bay Radiology stopped providing services on September 23, 2019." Appx. Vol. II, p. 87; Doc. 18-2, p. 3. Only after receiving this information did Logue request a copy of the schedule. *Id.*

Curiously, Browning also goes so far as to suggest that Mr. Dan Rushing's use of quotation marks around "child bonding" in certain emails demonstrate pretext or retaliatory intent. Needless to say, the use of quotation marks, in and of itself, is not circumstantial evidence of pretext, and Browning has no evidence to tie these "quotation marks" to some nefarious motive not otherwise reflected in the record.

Ultimately, it is Browning's burden to demonstrate that there is evidence that Bay Radiology's proffered reason for his termination from employment was not the

true reason for that employment decision.  He has not done so because he cannot. The District Court's Order is due to be affirmed.[4]

### C.   Browning's argument that he can present a "convincing mosaic of evidence of discrimination" is not properly before this Court because Browning did not raise this theory with the District Court.

For the first time in this appeal, Browning raises the theory that he can prove his FMLA claims by presenting a "convincing mosaic of circumstantial evidence" that would allow a jury to infer retaliation.  As this Court has held, though, if a "[p]laintiff raise[s] no argument under the 'convincing mosaic' theory in the district court, . . . that argument is not properly before us." *Corley v. Mercedes-Benz U.S. Int'l, Inc.*, No. 21-11986, 2022 WL 2345808, at *3 (11th Cir. June 29, 2022) (citing *Access Now*, 385 F.3d at 1331 ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").) Likewise, in *Grant v. Elmore County Board of Education*, No. 22-11448, 2023 WL 309309, at *2 (11th Cir. Jan. 19, 2023), this Court refused to consider the "convincing mosaic" theory of discrimination because it was not raised before the trial court:

> The record here demonstrates that Grant argues for the first time on appeal that she established a 'convincing mosaic' of circumstantial evidence allowing a jury to infer the defendants' intentional race discrimination. . . [a]s she has not argued that extraordinary circumstances exist warranting an examination of

---

[4] Browning does not make any separate argument related to his FMLA interference theory. Accordingly, the same arguments here apply and the District Court's grant of summary judgment on that claim is due to be affirmed.

> the issue on the merits, however, we conclude that she has
> forfeited the argument on appeal.[5]

*Grant*, 2023 WL 309309, at *2.  Here, there is no question that Browning did not

present the "convincing mosaic" theory to the District Court, nor has he presented

any extraordinary circumstances to account for his failure.  Consequently, Browning

has forfeited this argument and the District Court's order is due to be affirmed.

Even if the Court were to substantively consider Browning's "convincing

mosaic of discrimination" theory, though, Browning's claim still fails.  Based on his

argument, it appears that Browning believes that the "convincing mosaic" theory

operates as a random catch-call, allowing a plaintiff to survive summary judgment

based on a hodge-podge of alleged suspicions he holds regarding others'

motivations.  For example, Browning suggests that there was a lack of contact from

his physician partners while he was on leave.  But there is no evidence regarding

partner interactions prior to his leave to suggest that this was uncommon.  Likewise,

Browning suggests that there was an "increasingly confrontational tone" to

communications from Bay Radiology, but—leaving aside the fact that his

---

[5] Having not raised the issue of extraordinary circumstances in his initial brief, Browning has abandoned that argument.  *Grant*, 2023 WL 309309, at *1 (11th Cir. Jan. 19, 2023) ("issues not raised in an appellant's initial brief are deemed abandoned and will not be addressed absent extraordinary circumstances."); *see also Fed. Sav. & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 373 n.3 (11th Cir. 1987) (quoting *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d, 1, 3 (1st Cir. 1983) ("The waiver rule requires that the appellant state and address argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief because '[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's initial brief for the scope of the issues appealed'.").

characterization or belief is not evidence of retaliation—he ignores the obvious fact that he was refusing to respond to simple questions regarding whether he had taken a position with another company.  In short, while Browning may subjectively believe that there was some nefarious motive to Bay Radiology's actions, an objective view of the record evidence in this case clearly demonstrates that there is not a "convincing mosaic" of evidence that demonstrates a retaliatory motive. Accordingly, this District Court's Order is due to be affirmed.

## III.   The District Court Did Not Abuse its Discretion by Accepting Supplemental Jurisdiction over Browning's Breach of Contract Claim.

The District Court granted summary judgment in favor of Appellees on Plaintiff's claims for interference and retaliation under the FMLA and on Browning's claim for breach of contract against Bay Radiology, but remanded the remaining claims to state court.  In doing so, the District Court exercised its discretion and exercised supplemental jurisdiction over Browning's breach of contract claim, determining that Browning's failure to prove any damages necessary for his FMLA claims also prevented Browning from proving the breach of contract damages necessary to avoid summary judgment under Florida law.  Specifically, the District Court stated the following:

> With the FMLA claims resolved, that leaves only state-law claims: each side's breach-of-contract claim, and Browning's document-inspection claim.  The court had no original jurisdiction over those state-law claims; jurisdiction was based solely on § 1367 supplemental jurisdiction.  The court has

41

discretion whether to decide those claims, but "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors will point toward declining to exercise pendent jurisdiction." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) (cleaned up).

Here, the balance of factors all point to declining to exercise that jurisdiction, with one exception. ***The lack of damages that resolves the FMLA claims also resolves Browning's breach-of-contract claim. Browning's counsel acknowledged at the hearing that the damages for his breach-of-contract claim and his FMLA claims were identical. And the court has already determined that Browning has not shown any FMLA damages. So that dooms Browning's contract claim, because Florida law requires damages.*** *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Appx. Vol. V, p. 115-16; Doc. No. 37, p. 13-14 (emphasis added).

Eleventh Circuit law recognizes that "[t]he doctrine of supplemental jurisdiction—sometimes referred to as 'pendent jurisdiction'—permits 'federal courts to decide certain state-law claims involved in cases raising federal questions' when doing so would promote judicial economy and procedural convenience." *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 530 (11th Cir. 2015). The modern doctrine of supplemental jurisdiction derives from *United Mine Workers of America v. Gibbs,* , 383 U.S. 715,(1966), and *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343  (1988). Congress codified the parameters of supplemental jurisdiction in 28 U.S.C. § 1367, providing the particular circumstances under which a district court may dismiss claims brought under § 1367(a).  *Ameritox*, 803 F.3d at 531-32.

42

Moreover, the Supreme Court of the United States since has held that a district court, when determining whether to dismiss claims brought under supplemental jurisdiction, "must weigh the 'host of factors' outlined in *Gibbs* and *Cohill*: 'judicial economy, convenience, fairness, and comity.'" *Id.* at 532 (citing *City of Chicago*, 522 U.S. at 173). Eleventh Circuit law recognizes that district court's discretion is "broad." *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 866 (11th Cir. 2022)

The District Court did not abuse its discretion by determining that the principle of judicial economy outweighed other factors and warranted the accepting of supplemental jurisdiction over Browning's breach of contract claim. As the District Court recognized both in its Final Order and its Order denying Browning's Motion to Amend Judgment:

> The same failure that doomed Browning's FMLA claim—lack of damages—doomed his contract claim in the same way. Thus, it was judicially economical to resolve that contract claim here, rather than send it back for a state court to start anew. And it did not involve any complicated or novel area of law for which comity might favor remand; the lack of damages made for a straightforward application of Florida law. Therefore, after considering the balance of factors, and as a matter of discretion, the court determined it was appropriate to exercise jurisdiction over Browning's contract claim.

Appx. Vol. V, pp. 191-2; Doc. No. 18-2, pp. 1-2. The District Court made this determination while recognizing that "when a court resolves all federal claims and has no original jurisdiction over remaining state-law claims, the usual practice is to

remand the latter[.]" *Id.* Accordingly, the District Court clearly applied the appropriate law.

Browning argues that judicial economy actually supports remand of his breach of contract claim. In doing so, Browning cites *Sabal Construction & Roofing, LLC v. Western World Insurance Company*, No. 2:20-CV-989-SPC-KCD, 2022 WL 16725364 (M.D. Fla. Oct. 21, 2022), for the proposition that judicial economy is best "served when issues of state law are resolved in state courts." *Sabal Constr.*, 2022 WL 16725364, at *1. But Browning completely ignores the critical distinctions between that case and the present circumstances. Namely, in *Sabal Constr.*, the district court recognized that it would have to "analyze and rule on complex ethical issues arising under the Rules Regulating the Florida Bar" to resolve the claim. *Sabal Constr.*, 2022 WL 16725364, at *1. In other words, this issues of state law in that case were complex and not straightforward. To the contrary, in the present case, the District Court specifically found that there were no complex state law issues and the application of Florida law was "straightforward." If anything, *Sabal Construction* provides an example of when a court may exercise its discretion to decide not to exercise supplemental jurisdiction due to the presence of complex state law issues. But that is simply not applicable here where no such complex state law issues exist. By contrast, here, there was no such complex issue, and the work necessary to rule on the damages element of Browning's breach of contract claim

was work the District Court had already done. Ruling on that claim did not require any great expenditure of judicial resources beyond what had already been undertaken. Remanding that claim to state court, meanwhile, would leave all that same work to be done again by the state court, resulting in a waste of judicial resources.

"A district court has not abused its discretion when the court has 'a range of choices' and the court's choice 'does not constitute a clear error of judgment.'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) (citing *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir.2001), *cert. denied*, 535 U.S. 976, 122 S.Ct. 1449, 152 L.Ed.2d 391 (2002)). Here, Browning does not agree with the District Court, but he cannot demonstrate that the District Court committed a clear error of judgment by exercising supplemental jurisdiction over his breach of contact claim. Accordingly, the District Court's Order is due to be affirmed.

## **CONCLUSION**

Considering the foregoing, Appellees respectfully request that this Court affirm the District Court's Final Order.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief contains 10,831 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman typeface.

*/s/ Daniel E. Harrell*
**DANIEL E. HARRELL**

46

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the Answer Brief of Appellees has been electronically filed with the Eleventh Circuit Court of Appeals and served electronically to all counsel of record under 11th Circuit Local Rules 25-3(b) and 31-5 this 28th day of March, 2024 and that the required paper copies of the forgoing have been submitted under Local Rules 31-1(a) and 31-3 via Federal Express delivery to David J. Smith, Clerk of Court, United States Court of Appeals for the Eleventh Circuit, 56 Forysth Street N.W., Atlanta, Georgia 30303 this 28th day of March, 2024.

*/s/ Daniel E. Harrell*
**DANIEL E. HARRELL**