**23-13842**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

JASON M. BROWNING, MD,

*Plaintiff-Counter Defendant-Appellant,*

—v.—

BAY RADIOLOGY ASSOCIATES PL, CARL G. BAILEY, JR., MD, EMILY D. BILLINGSLEY, MD, LLOYD G. LOGUE, DO, GREGORY A. PRESSER, MD, et al.,

*Defendants-Counter Claimants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF FLORIDA

## REPLY BRIEF FOR PLAINTIFF-COUNTER DEFENDANT-APPELLANT

ROBERT C. JACKSON
D. ROSS MCCLOY, JR.
WILLIAM PLATT, IV
HAND ARENDALL HARRISON
  SALE, LLC
304 Magnolia Avenue
Panama City, Florida 32401
(850) 769-3434

*Attorneys for Plaintiff-Counter
  Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1-1., the undersigned counsel of record verifies that those persons and entities that have or may have an interest in the outcome of the above captioned case are listed below:

1.  Bailey, Carl G., M.D. (Appellee and physician member of Appellee Bay Radiology)

2.  Bay Radiology Associates, P.L. (Appellee)

3.  Billingsley, Emily D., M.D. (Appellee and physician member of Appellee Bay Radiology)

4.  Branning, Jeremy C. (counsel for the Appellees)

5.  Browning, Jason M., M.D. (Appellant)

6.  Clark Partington (law firm for the Appellees)

7.  Hand Arendall Harrison Sale (law firm for the Appellant)

8.  Harrell, Daniel E. (counsel for the Appellees)

9.  Henry, The Honorable William (State of Florida Circuit Judge)

10. Jackson, Robert C. (counsel for the Appellant)

11. Logue, Lloyd G., D.O. (Appellee and physician member of Appellee Bay Radiology)

12.  McCloy, D. Ross Jr. (counsel for the Appellant)

13.  Platt, William IV (counsel for the Appellant)

14.  Presser, Gregory A., M.D. (Appellee and physician member of Appellee Bay Radiology)

15.  Ramey, Scott L., M.D. (Appellee and physician member of Appellee Bay Radiology)

16.  Rushing III, W. Daniel (Appellee and officer of Appellee Bay Radiology)

17.  Spencer, Andrew McKinnon (counsel for the Appellees)

18.  Weintritt-Davis, Lindsey, M.D. (Appellee and physician member of Appellee Bay Radiology)

19.  Winsor, Allen C. Honorable (United States District Court Judge)

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ........................ C-1

TABLE OF CITATIONS................................................. iii

ADDITIONAL STATEMENT OF FACTS.............................. 1

ADDITIONAL LEGAL ARGUMENT................................... 4

    I.   Defendants' Argument that the District Court Did Not Need to
Make a Finding of Willfulness or Bad Faith Because It
Excluded Evidence Under Rule 37(c)(1) that Resulted in a
Dismissal Rather Than Making a Specific Dismissal Sanction
is Nonsensical and Not in Conformity with this and other
Circuit Court Precedent........................................... 4

      A. Sanctions available to a district court under Rule 37(c) ... 4

      B. Circuit courts require a finding of willfulness or bad faith
when a dismissal or judgment results from a Rule 37
violation ...................................................... 5

    II.  Defendants' Argument that Summary Judgment was
Appropriate Here Ignores the Latest Employment
Jurisprudence From this Circuit and the Ultimate Question
in this Case – Is there Enough Evidence for a Reasonable
Factfinder to Infer Retaliation................................... 8

      A. The current state of employment jurisprudence in the
Eleventh circuit. ............................................. 8

        (i)   *Tynes v. Florida Department of Juvenile Justice*...... 9

        (ii)  *Lapham v. Walgreen Company*.........................11

        (iii) *Tynes* and *Lapham* should be read together ..........12

B. The district court, which did not have the benefit of *Tynes*, applied an intricate, check the box review of the evidence instead of a holistic review of the entire record . . . . . . . . . . 13

(i)   The district court ignored evidence of pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(ii)  A holistic view of the entire record shows sufficient evidence of FMLA retaliation or interference . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF CITATIONS

PAGE(S)

## Cases

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
    12 F.3d 1045 (11th Cir. 1994) ..................................... 5, 6

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir.2006) .......................................... 7

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
    439 F.3d 1286 (11th Cir. 2006)............................... 13, 14

*Jefferson v. Sewon Am., Inc.*,
    891 F.3d 911 (11th Cir. 2018) ...................................... 18

*Lapham v. Walgreen Co.*,
    88 F.4th 879 (11th Cir. 2023) ......................... 8, 11, 12, 13

*Powell v. Siegal*,
    447 Fed. Appx. 92 (11th Cir. 2011) ................................ 5

*R & R Sails, Inc. v. Insurance Co. of Pennsylvania*,
    673 F.3d 1240 (2012) ............................................... 6, 7

*S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*,
    318 F.3d 592 (4th Cir.2003)......................................... 7

*Spakes v. Broward Cnty. Sheriff's Off.*,
    631 F.3d 1307 (11th Cir. 2011)..................................... 12

*Steed v. EverHome Mortg. Co.*,
    308 Fed. Appx. 364 (11th Cir. 2009)................................ 6

*Tex. A & M Research Found. v. Magna Transp., Inc.*,
    338 F.3d 394 (5th Cir.2003)......................................... 7

*Tynes v. Florida Department of Juvenile Justice*,
    88 F.4th 939 (11th Cir. 2023) ................................. passim

## Statutes

FMLA.................................................................. passim

iii

**Rules**

Fed. R. Civ. P. 37 ............................................................. 5, 6, 7, 21

Fed. R. Civ. P. 37(b)(2) ...................................................... 7

Fed. R. Civ. P. 37(b)(2)(A) .................................................. 4

Fed. R. Civ. P. 37(b)(2)(A)(i) ............................................... 4

Fed. R. Civ. P. 37(b)(2)(A)(v-vi) ........................................... 4

Fed. R. Civ. P. 37(c) .......................................................... 4

Fed. R. Civ. P. 37(c)(1) ................................................... 4, 6, 7

Fed. R. Civ. P. 56 ............................................................ 18

## ADDITIONAL STATEMENT OF FACTS

Browning provides the following additional facts and clarifications in response to the facts supplied by Defendants in their response brief. Many of the facts provided by Defendants in the response brief are from their own affidavits in this case, which are not construed in the light most favorable to Browning.

Defendants claimed that they tentatively approved Browning's FMLA leave request for his medical condition, Doc 18-1 at 5 (¶8) [1] but according to the Designation Notice sent by Bay Radiology, additional information was needed before approval including a second or third medical certification at Bay Radiology's expense. Doc. 18-3 at 131. More details were supposed to be provided about such second or third medical exam, but never were because Bay Radiology terminated Browning the next day without notice. Doc 18-1 at 53; Doc. 18-4 at 70:2-7.

Browning's employment was not at will, but subject to an employment contract. Doc 18-1 at 3 (¶3). Section 2.3 of the employment contract required

---

[1] Per 11th Cir. R. 28-5, citations to the record are to docket number and page number of the docket entry, unless the entry contains numbered paragraphs, which are then indicated by the ¶ symbol after the page number. Citations to transcripts in the record are to the docket number, then page and line number assigned by the court reporter, unless otherwise indicated by a "(p. _)" after the docket number and page.

at least 30 days written notice prior to a termination for any material breach.

Doc. 18-1 at 15 (¶2.3). Although it could be terminated immediately under

certain conditions with a two-thirds vote of the members, Browning's contract

contained an "unwritten policy or procedure" provision built into it that

protected against unnoticed and arbitrary terminations. The provision states:

> Physician shall not be terminated as a result of a failure or refusal
> to follow or comply with an unwritten policy or procedure of
> Employer unless Physician has been advised of such policy or
> procedure before the Physician's failure or refusal to follow or
> comply with such unwritten policy or procedure.

Doc. 18-1 at 16 (¶2.4). It is undisputed that Bay Radiology did not comply

with this provision and provided Browning with no notice whatsoever.  Dan

Rushing confirmed this in his deposition:

> Q: Okay. Did you provide -- did Bay Radiology provide Dr.
> Browning with any notice of breach?
>
> A: We did not.
>
> Q: Did you provide Dr. Browning with any kind of notice
> whatsoever?
>
> A: We did not.

Doc. 18-4 at 70:2-7.

Further, in its affidavits and throughout its response, Defendants

claimed multiple times that Browning "never responded to Bay Radiology's

request for information." Doc. 18-1 at 5-6 (¶9). But Browning responded each and every time information was requested. *See* Doc 18-3 at 246-51. The period from first letter contact with Bay Radiology and Browning's termination for cause was only two to three days. *See id.*

Finally, Defendants hinted in a footnote in their response that it was unclear what day several doctors left Bay Radiology and started working for competitors. Appeal Doc. 18 at 43(fn.3). For clarity, Drs. Ramey, Bain, and Baily all left Bay Radiology on September 23, 2019, Doc. 18-8 at 22, and started working for competitors immediately thereafter, Doc. 18-4 at 62:13-23, 63:3-6 (discussing Ex. 1 at Doc. 18-8 at 22); Doc. 18-9 at 7:9-13, 20:13-24. Doctors Ramey and Bain did not go to work at Gulf Coast Hospital, where Dr. Browning ended up working, but instead worked at Ascension Sacred Heart. Doc. 18-4 at 62:13-23, 63:3-6; Doc. 18-9 at 7:9-13, 20:13-24; Doc. 18-2 at 6. Ascension Sacred Heart and Gulf Coast hospitals are competitors and presumably would not share a schedule with each other.

## ADDITIONAL LEGAL ARGUMENT

**I.    Defendants' Argument that the District Court Did Not Need to Make a Finding of Willfulness or Bad Faith Because It Excluded Evidence Under Rule 37(c)(1) that Resulted in a Dismissal Rather Than Making a Specific Dismissal Sanction is Nonsensical and Not in Conformity with this and other Circuit Court Precedent.**

### A.    Sanctions available to a district court under Rule 37(c)

A district court has several ways to handle discovery violations under Rule 37(c). First, a district court may, without a motion or a hearing, exclude undisclosed witnesses or evidence unless the court determines that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Next, in addition to excluding evidence or witnesses, a district court can impose other appropriate sanctions, including those enumerated in Rule 37(b)(2)(A)(i)—(vi), but only "on motion and after giving an opportunity to be heard." *Id.* One of the possible sanctions enumerated in Rule 37(b)(2)(A) includes a dismissal or judgment rendered on the action. Fed. R. Civ. P. 37(b)(2)(A)(v-vi).

Here, it is undisputed that there was no discovery sanction motion or an opportunity to be heard on the discovery issue that resulted in the dismissal and subsequent judgment on three of four Browning's counts. Instead, the district court excluded any evidence of damages supporting Browning's

counts, which resulted in their dismissal. Doc. 37 at 8. Defendants argue that a district judge excluding evidence that results in an indirect dismissal of a case is different than a district judge directly dismissing a case as a discovery sanction.  But this is a distinction without a difference. In the end, the case is dismissed either way. The courts have not made any such distinction and treat an outright dismissal under Rule 37 uniformly as an overly harsh and extreme result that should not be the result of "simple negligence, misunderstanding, or inability to comply." *BankAtlantic v. Blythe Eastman Paine Webber, Inc*., 12 F.3d 1045, 1049 (11th Cir. 1994).

**B.    Circuit courts require a finding of willfulness or bad faith when a dismissal or judgment results from a Rule 37 violation.**

Circuit courts around the country require a finding a willfulness or bad faith when a dismissal or judgment results from a Rule 37 violation. This Circuit states: "[d]ismissal under Rule 37… is 'appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.' " *Powell v. Siegal*, 447 Fed. Appx. 92, 94 (11th Cir. 2011)(quoting *Malautea v. Suzuki Motor Co*., 987 F.2d 1536, 1542 (11th Cir.1993). Further, " '[d]ismissal with prejudice is the most severe Rule 37 sanction and is not favored ... [b]ut [it] may be appropriate when a [party's]

5

recalcitrance is due to wilfulness, bad faith or fault.' " *Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 370 (11th Cir. 2009) (quoting *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993). The Eleventh Circuit "caselaw is clear that only in a case where the court imposes the most severe sanction— default or dismissal—is a finding of willfulness or bad faith failure to comply necessary." *BankAtlantic,* 12 F.3d at 1049.

The Eleventh circuit cases have not yet made a distinction on the requirements for a bad faith determination for the different subsections of Rule 37. But other circuits have specifically applied it to dismissals or judgments resulting from excluded evidence under Rule 37(c)(1). In *R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240 (2012), the Ninth Circuit considered whether a district court abused its discretion by excluding certain evidence under Rule 37(c)(1) that resulted in the dismissal of a claim without making a finding of bad faith or willfulness. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012). The court found that "the sanction was particularly harsh …" because "… in practical terms, the sanction amounted to dismissal of a claim. *Id.* The Ninth Circuit reversed and remanded the case because the district court did not consider bad faith or willfulness when issuing the sanction, nor the availability of possible lesser

sanctions. *Id.* at 1247-48. The court also noted that this position was consistent with other circuits courts throughout the country.[2] *Id.*

Here, similar to *R & R Sails, Inc.*, the record does not, and cannot, support a finding of willfulness or bad faith. There is no indication that the district court ever considered if less drastic sanctions would have been adequate even when one such alternative was immediately offered by Browning via motion. Doc. 32.  Defendants' argument that a finding of bad faith or willfulness was not required because the sanction was an exclusion of evidence under Rule 37(c)(1) that resulted in a dismissal instead of an outright dismissal under Rule 37(b)(2) is a distinction without a difference. This Court's caselaw and other circuit court's caselaw require a finding of bad faith or willfulness when a dismissal or judgment results from a Rule 37 violation, period. Based on the district's court failure to consider bad faith, willfulness

---

[2] The Ninth Circuit stated that "this approach accords with the decisions of other circuits. See, e.g., *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir.2006) (requiring the district court to consider the possibility of a continuance); *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir.2003) (requiring consideration of the surprise to the party against whom the evidence would be offered and the ability of that party to cure the surprise); *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir.2003) (requiring consideration of the possibility that a continuance would cure prejudice to the opposing party)." *R & R Sails, Inc.*, 673 F.3d at 1247-48.

or lessor sanctions prior to dismissing this case, the district court's discovery

sanction should be reversed and remanded.

**II.    Defendants' Argument that Summary Judgment was Appropriate Here Ignores the Latest Employment Jurisprudence From this Circuit and the Ultimate Question in this Case – Is there Enough Evidence for a Reasonable Factfinder to Infer Retaliation.**

      **A.    The current state of employment jurisprudence in the Eleventh circuit.**

After the district court issued its final order and judgment in this case on

August 1, 2023, the Eleventh Circuit issued to two employment law opinions

that have broad impact, including to this case. Although these two opinions

do not directly overturn the district court judgment here, they provide much

needed guidance to district court judges and employment practitioners alike

in how to handle certain types of employment claims at the summary

judgment stage. The first case, *Tynes v. Florida Department of Juvenile

Justice*, 88 F.4th 939 (11th Cir. 2023), decided on December 12, 2023, clarified

the role of the ubiquitous *McDonnell Douglas* burden shifting test in

employment matters, the purpose of the "convincing mosaic" standard in

reviewing claims, and the ultimate question to be resolved at summary

judgment by the courts. The second case, *Lapham v. Walgreen Co.*, 88 F.4th

879 (11th Cir. 2023), decided on December 13, 2023, held that as a matter of

first impression in the Circuit the proper causation standard for retaliation claims under the FMLA is "but for" causation. The district court did not have the benefit of these cases prior to issuing its final order, and the Defendants' response brief did not address either case. So, it would be appropriate to address these decisions and their applicability to the case at bar.

### (i)     *Tynes v. Florida Department of Juvenile Justice*

Right off the bat, *Tynes* confirmed that the 50-year-old *McDonnell Douglas* evidentiary framework is not a stand in for the ultimate question of liability in an employment discrimination claim. *Tynes v. Fla. Dep't of Juvenile Just.*, 88 F.4th 939, 941 (11th Cir. 2023). Instead, it is a "*procedural* device, designed only to establish an order of proof and production." *Id.* at 945 (citations omitted). "Often, however, parties (and sometimes courts) miss this fundamental point and wrongly treat the prima facie case as a substantive standard of liability." *Id.* Because it is not a stand in for the ultimate question of liability, the failure to produce a comparator or fulfil some other requirement of *McDonnell Douglas* does not foreclose a claim. *Id.* at 946 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). To the contrary, "the plaintiff will always survive summary judgment

if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

So, according to *Tynes*, how does a judge determine if there is a triable issue of fact concerning the employer's discriminatory intent? Through a *McDonnell Douglas* analysis or what the Eleventh Circuit has called a " 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " *Id.* (quoting *Smith*, 644 F.3d at 1327–28). Ultimately, these procedural devices (*McDonell Douglas*) and evidentiary descriptions (the "convincing mosaic") merge into one to answer the ultimate question that a court must address: "whether there is a sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff." *Id.* at 947 (citing *Cleveland v. Home Shopping Network, Inc*., 369 F.3d 1189, 1194 (11th Cir. 2004). To answer this question, a court should "look beyond the prima facie case to consider <u>all</u> relevant evidence in the record to decide the ultimate question of intentional discrimination." *Id.* (emphasis added).

Judge Newsom, in his concurrence in *Tynes*, went even further. He argued that the *McDonnell Douglas* standard is no longer helpful, if it ever

was, and should be eliminated or curtailed. *Id.* at 951 (Newsom, concurring).

His concerns are that:

> lower courts have become progressively obsessed with its
> minutiae, allowing it to drive substantive outcomes. The
> framework's constituent details have grown increasingly intricate
> and code-like, as courts have taken to forcing a holistic
> evidentiary question—whether all the evidence, viewed in the
> light most favorable to the plaintiff, creates a genuine factual
> dispute—into a collection of distinct doctrinal pigeonholes.

*Id*. at 952-53. He was particularly concerned that these requirements were now

"a series of standalone, case-dispositive elements—boxes to be checked—

rather than simply asking the controlling question whether the facts give rise

to a triable issue of discrimination." *Id*. at 953.

### (ii)    *Lapham v. Walgreen Company*

The same week it released *Tynes*, the Eleventh Circuit published *Lapham*

*v. Walgreen Co*., 88 F.4th 879 (11th Cir. 2023). *Lapham* held that the proper

causation standard for an FMLA retaliation claim is but for causation. *Lapham*

*v. Walgreen Co*., 88 F.4th 879, 883 (11th Cir. 2023). The *Lapham* court, which

presumably did not have the benefit and analysis of the *Tynes* decision yet,

confirmed that the *McDonnell Douglas* burden shifting framework applied to

FMLA retaliation claims. *Id.* at 889. Also, *Lapham* reaffirmed that in an

FMLA interference claim where the alleged interference is termination, an

employer can defend its termination by establishing a reason for the termination that is "wholly unrelated" to the FMLA leave request. *Id*. at 896. But the employer must persuade the court that the termination is independent of the request for FMLA leave. *Spakes v. Broward Cnty. Sheriff's Off.*, 631 F.3d 1307, 1310 (11th Cir. 2011).

### *(iii) Tynes and Lapham should be read together*

Reading *Tynes* and *Lapham* together provides the most current guidance on how to review FMLA retaliation and interference termination claims at the summary judgment stage. First, plaintiffs can provide either direct or circumstantial evidence of retaliation or interference. *Lapham,* 88 F.4th at 889. Circumstantial evidence of retaliation can be reviewed through either: (1) the *McDonnell Douglas* procedure framework, or (2) by producing sufficient evidence that allows a jury to infer intentional discrimination by the decisionmaker ("convincing mosaic"). *Tynes,* 88 F.4th at 945-46. Ultimately, the court must decide if there is a sufficient evidentiary basis for a jury to find retaliation against a plaintiff after considering all relevant evidence in the record in the light most favorable to the plaintiff. *Id.* at 947. Further, this evidence must be sufficient enough for a jury to be able to determine that "but

for" the plaintiff's leave request, he would not have been terminated. *Lapham,* 88 F.4th at 883, 896.

**B.  The district court, which did not have the benefit of *Tynes*, applied an intricate, check the box review of the evidence instead of a holistic review of the entire record.**

*(i)  The district court ignored evidence of pretext*

Here, the district court fell into the *McDonnell Douglas* trap that concerned Judge Newsom. The district court dutifully went through all the elements of the *McDonnell Douglas* framework one by one until it got to pretext. Doc. 37 at 9-10. At pretext, the district court appeared to become "progressively obsessed with [the *McDonnell Douglas*] minutiae," allowing it to drive the substantive outcome here instead of stepping back and looking at the record as a whole. The district court stated that "[b]eyond temporal proximity, Browning points to no evidence demonstrating pretext." *Id.* at 10. But there is evidence everywhere in the record demonstrating pretext. As the district court conceded, the extreme close proximity of Browning's FMLA leave request to his termination – mere days - is evidence itself of pretext. *Id.* at 9-10. *See also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). While the extremely short time between Browning's leave request and his ultimate termination may not be sufficient in itself to

13

establish pretext, coupled with the other evidence in the record, it is strongly persuasive.

First, Logue's explanation, cited by the district court, that Ramey was not dishonest because he didn't sign on with a different company while still working for Bay Radiology, is false. *See* Doc. 37 at 10. Logue knew, and the district court found, that Ramey was a "pending hire" at Ascension back in August while Ramey was still working for Bay Radiology. Doc. 37 at 3; Doc. 18-5 at 51. Bay Radiology also admitted that the process a physician and a new practice had to go through to onboard a radiologist takes "several weeks." Doc. 23-1 ¶¶ 3,4. There is simply no way that Logue's explanation of why Ramey was not fired for dishonesty or working with another employer, but Browning was, can be true. Conflicting reasons are per se prextextual.

Also, "an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert*, 439 F.3d at 1298. Here, Bay Radiology's reason for Browning's termination is a moving target. Bay Radiology has alternatively said that it terminated Browning's contract because he was "dishonest," Doc. 18-5 at 14 (48:5-23); that he agreed to work for another employer, Doc. 18-1 7-8 (¶12); that he engaged in the practice of medicine for someone else, Doc. 18-1 at 53;

and that he did not respond to questions when asked Doc. 18-1 at 6-7. There is hardly a clear and consistent reason for termination here, even though Browning had an employment contract with Bay Radiology that required them to provide notice of a violation of any "unwritten policy or procedure" before termination. Doc. 18-1 at 16 (¶2.4).

Bay Radiology simply ignored Browning's employment contract when it terminated him three weeks after he made his initial FMLA request. Browning's employment contract with Bay Radiology required at least 30 days written notice prior to termination for any material breach. Doc. 18-1 at 15 (¶2.3). Although it could be terminated immediately with a two-thirds vote of the members under certain conditions, Browning's contract also contained an "unwritten policy or procedure" provision built into it that protected against unnoticed and arbitrary terminations. The provision stated:

> Physician shall not be terminated as a result of a failure or refusal to follow or comply with an unwritten policy or procedure of Employer unless Physician has been advised of such policy or procedure before the Physician's failure or refusal to follow or comply with such unwritten policy or procedure.

Doc. 18-1 at 16. Dan Rushing confirmed at his deposition that Bay Radiology provided Browning with no notice whatsoever when it terminated him. Doc.

18-4 at 70:2-7. Bay Radiology's ignoring of Browning's clear employment contract provisions is additional evidence of pretext.

Finally, there is ample evidence in the record of similarly situated physicians being treated differently by Bay Radiology based on their FMLA leave status. In July 2019, all Bay Radiology physician members were encouraged to look at options for future employment as a radiologist, including continued work at Gulf Coast, Doc. 21-1 ¶4, or with Envision. Doc. 37 at 3. Logue, Ramey, Billingsley, Bain, and Browning all attended a dinner with Envision to discuss working for them. Doc. 21-1 ¶ 7; Doc. 18-5 at 30:24-25 and 31:1-17; Doc. 18-9 at 14:7-23. Soon thereafter, Logue learned that Ramey and Bain were pending hires elsewhere. Doc. 37 at 3; Doc. 18-5 at 51. After the dinner and while all the physician were looking at options for future employment, Browning applied for FMLA leave. *Id.* at 4-5. Two to three weeks later, Bay Radiology fired Browning because he was "working with another employer." Doc. 18-1 at 53. But Ramey and Bain were also working with another employer as "pending hires" and started working for a competitor on the exact same day as Browning.  See Doc. 18-8 at 22. Doc. 18-4 at 62:13-23, 63:3-6; Doc. 18-9 at 7:9-13, 20:13-24. Neither was fired by Bay

Radiology for "working with another employer." This differential treatment of similarly situated physicians is also evidence of pretext.

All of this evidence is in the record and was discussed by the parties and the district court in the briefs and at the summary judgment hearing. But the district court ignored it and instead engaged in the kind of hyper hairsplitting that Judge Newsom was concerned about in *Tynes*. The hearing transcript shows that the district court got hung up on who he thought was being honest or dishonest and around hypotheticals involving law clerks and going away parties. *See* Doc. 60 (transcript) at 61-66. Regardless, the record shows that Bay Radiology's reasons for terminating Browning were pretextual. And an examination of the record as a whole in the light most favorable to the plaintiff shows that substantial evidence exists of FMLA retaliation.

### (ii)    *A holistic view of the entire record shows sufficient evidence of FMLA retaliation or interference*

Defendants argue in their response that Browning is prohibited from presenting evidence on appeal outside of the *McDonell Douglas* framework because it did not raise these issues at the district court. First, all the evidence in this appeal is of record and was briefed, discussed, and heard at the district court level either in the competing summary judgment motions or at the

summary judgment hearing. Second, Defendants' argument ignores *Tynes* and the recent steps this Court has taken toward a more evidence-based, less technical "check the box" approach to summary judgment in employment matters. The standard of review for summary judgment at the appellate level is *de novo*, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018). So, this Court should examine all the evidence in the record to determine if judgment was appropriate. If *Tynes* stands for anything, it is that courts in employment matters should examine the evidence as a whole at the summary judgment stage and not focus on technical procedural devices or legal nomenclature. "Strip away the grandiloquence—after all, "convincing mosaic of circumstantial evidence" just means "evidence"—and that is exactly Rule 56's summary-judgment standard. *Tynes,* 88 F.4th at 951 (Newsom, concurring).

There is a plethora of evidence here that would allow a jury to find Bay Radiology and its decisionmakers retaliated against Browning for taking FMLA leave. Much of it has already been discussed elsewhere in the briefs and in the pretext argument. But here is a quick overview of the evidence in

the record cited elsewhere that a jury could rely upon to find FMLA retaliation here.

- **Timing**: Bay Radiology's quick, almost hypersonic, termination of Browning after his FMLA leave request goes directly to causation and is unusual after an employee's decades long employment with no disciplinary problems. Doc. 21-2 at 2; *See* Doc. 18-3 at 246-249

- **Termination.** Bay Radiology's stated reason for termination was because Browning was "working with another employer," but at least two other doctors were also working with other employers at the same time and were not terminated. Neither one of these doctors took FMLA leave. *See* Doc. 18-1 at 53; Doc. 18-8 at 22. Doc. 18-4 at 62:13-23, 63:3-6; Doc. 18-9 at 7:9-13, 20:13-24.

- **Contract.** Browning and Bay Radiology had an employment contract that specifically required notice of termination even for violations of unwritten policies or procedures. The provision was designed to prevent the kind of arbitrary, immediate termination that occurred here. Bay Radiology simply ignored this provision and provided no notice to Browning. *See* Doc. 18-1 at 16 (¶2.4); Doc. 18-4 at 70:2-7.

- **No contact.** Once Browning requested FMLA leave, his partners stopped communicating with him. His only communications with Bay Radiology were through the business manager and Bay Radiology's lawyer. Bay Radiology never responded to his offer to help if needed and able. Doc. 21-1 at 5. *See* Doc. 18-3 at 246-251.

- **Medical exam**. Bay Radiology never approved Browning's FMLA medical leave request. Instead, they requested a second or third examination. If Bay Radiology carried through with their additional examination request (they never did, but terminated him instead), there would have been up to four physicians examining Browning's temporary medical condition. *See* Doc. 18-3 at 131.

In sum, the evidence in the record taken as a whole, clearly shows that a reasonable jury could infer that Bay Radiology's reasons for terminating Browning suddenly, and without warning, were due to his recent FMLA request and not to any other legitimate non-retaliatory reason.

## CONCLUSION

For the foregoing reasons and the ones cited in the appellate brief, Browning respectfully requests that this Court (1) reverse and remand for further consideration the district court's Rule 37 sanctions against Browning;

(2) reverse and remand the district courts summary judgment against browning on his FMLA retaliation and interference claims; and (3) if this Court determines that the district court did not abuse its discretion in dismissing Browning's claims under Rule 37 and that Bay Radiology is due summary judgment on Browning's FMLA claims, reverse and remand the district court's decision to accept supplemental jurisdiction over Browning's breach of contract claim but not Bay Radiology's counterclaim.

Dated: April 18, 2024

Respectfully submitted,

BY: /s/ Robert C. Jackson
Robert C. Jackson
D. Ross McCloy, Jr.
William Platt, IV

Hand Arendall Harrison Sale, LLC
304 Magnolia Avenue
Panama City, Florida 32401
(850) 769-3434
*Attorneys for Plaintiff-Counter Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 4,366 words. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

HAND ARENDALL HARRISON SALE

*/s/ Robert C. Jackson*
Robert C. Jackson, Esquire
Florida Bar No: 149519

Attorneys for Appellant

## <u>CERTIFICATE OF SERVICE</u>

In accordance with F. R. App. P. 25(a)(2)(B), I hereby certify that I have this day served the foregoing document via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with Notice of Docket Activity addressed to all parties as follows:

> Daniel E. Harrell, Esq.
> Jeremy C. Branning, Esq.
> P.O. Box 13010
> Pensacola, FL 32301
> dharrell@clarkpartington.com
> jbranning@clarkpartington.com

This 18th day of April 2024.

> HAND ARENDALL HARRISON SALE
>
> */s/ Robert C. Jackson*
> Robert C. Jackson, Esquire
> Florida Bar No: 149519
> 304 Magnolia Avenue
> Panama City, FL 32401
> rjackson@handfirm.com
> tthompson@handfirm.com
> Telephone (850) 769-3434
> Attorneys for Plaintiff